# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

R. ALEXANDER ACOSTA, Secretary of Labor, United States Department of Labor,

Plaintiff,

vs.

LOCAL 872, LABORERS INTERNATIONAL UNION OF NORTH AMERICA,

Defendant.

Case No.: 2:15-cv-1979-GMN-CWH

**ORDER**

Pending before the Court is the Motion for Summary Judgment, (ECF No. 31), filed by Plaintiff R. Alexander Acosta, Secretary of Labor of the United States Department of Labor ("Plaintiff"). Defendant Local 872, Laborers International Union of North America ("Defendant") filed a Response, (ECF No. 35), and Plaintiff filed a Reply, (ECF No. 43).

Also pending before the Court is the Cross Motion for Summary Judgment, (ECF No. 40), filed by Defendant. Plaintiff filed a Response, (ECF No. 44), and Defendant filed a Reply, (ECF No. 45). For the reasons discussed below, the Court **GRANTS** Plaintiff's Motion for Summary Judgment and **DENIES** Defendant's Cross Motion for Summary Judgment.

## I.    BACKGROUND

This case arises out of Defendant's 2015 election for union officers. Defendant is a labor organization recognized by the Labor-Management Reporting and Disclosure Act of 1959, as amended, 29 U.S.C. § 401, *et seq.* (the "LMRDA"). Defendant is located in Nevada and Arizona, and seventy percent of the members are Hispanic, with approximately thirty-five percent speaking only Spanish. (De La Torre Decl., Ex. A to Pl.'s Mot. for Summ. J. ("MSJ") at 3, ECF No. 31-3); (Stevens Decl., Ex. B to Pl.'s MSJ ¶ 2, ECF No. 31-10).

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

R. ALEXANDER ACOSTA, Secretary of Labor, United States Department of Labor,

Plaintiff,

vs.

LOCAL 872, LABORERS INTERNATIONAL UNION OF NORTH AMERICA,

Defendant.

Case No.: 2:15-cv-1979-GMN-CWH

**ORDER**

Pending before the Court is the Motion for Summary Judgment, (ECF No. 31), filed by Plaintiff R. Alexander Acosta, Secretary of Labor of the United States Department of Labor ("Plaintiff"). Defendant Local 872, Laborers International Union of North America ("Defendant") filed a Response, (ECF No. 35), and Plaintiff filed a Reply, (ECF No. 43).

Also pending before the Court is the Cross Motion for Summary Judgment, (ECF No. 40), filed by Defendant. Plaintiff filed a Response, (ECF No. 44), and Defendant filed a Reply, (ECF No. 45). For the reasons discussed below, the Court **GRANTS** Plaintiff's Motion for Summary Judgment and **DENIES** Defendant's Cross Motion for Summary Judgment.

## I.    BACKGROUND

This case arises out of Defendant's 2015 election for union officers. Defendant is a labor organization recognized by the Labor-Management Reporting and Disclosure Act of 1959, as amended, 29 U.S.C. § 401, *et seq.* (the "LMRDA"). Defendant is located in Nevada and Arizona, and seventy percent of the members are Hispanic, with approximately thirty-five percent speaking only Spanish. (De La Torre Decl., Ex. A to Pl.'s Mot. for Summ. J. ("MSJ") at 3, ECF No. 31-3); (Stevens Decl., Ex. B to Pl.'s MSJ ¶ 2, ECF No. 31-10).

Customarily, union members who seek to hold office must meet qualifications listed in Article V of the Laborers International Uniform Local Constitution (the "Constitution"), which includes literacy and residency. (*See* De La Torre Decl., Ex. A to Pl.'s MSJ at 90-92, ECF No. 31-4). Regarding literacy, the Constitution only requires that a candidate "[s]hall be literate." (*Id.* at 90). A resource for interpreting the Constitution titled "The Local Union Officer Elections: A Guide for Local Union Judges of Election, February 2013" (the "Election Guide"), (ECF Nos. 31-5, 31-6), provides an example question testing literacy in a sample candidate questionnaire. The sample questionnaire simply asks if the nominee can "read and write basic English." (Election Guide at 36, ECF No. 31-6). Beyond this guidance, Defendant lacks standardized criteria for testing literacy. (*See* De La Torre Decl., Ex. A to Pl.'s MSJ at 6, ECF No. 31-8).

Concerning residency, the Constitution requires that a candidate "[s]hall be a lawful permanent resident and shall be lawfully employable under the laws of the United States and Canada." (*See* De La Torre Decl., Ex. A to Pl.'s MSJ at 90, ECF No. 31-4). The Election Guide further specifies:

> In order to run for office, a member must: (c) be a lawful permanent resident and shall be lawfully employable under the laws of the United States and Canada; this qualification may be established by presenting one of the following: 1) Birth Certificate . . . ; 2) U.S. Passport . . . ; 3) Alien Registration Receipt Card with photograph (green card); 4) A Certificate of Naturalization; or, 5) such other documentation as the Judges may deem appropriate.

(Election Guide at 21, ECF No. 31-5).

On April 18, 2015, Defendant held elections for the positions of president, vice president, and secretary-treasurer/business manager ("secretary"). (De La Torre Decl., Ex. A to Pl.'s MSJ at 93, ECF No. 31-4). The candidates competing for the positions were either incumbents or challengers; the challengers included Martin Trujillo ("Trujillo") for vice president, John Stevens ("Stevens") for secretary, and Marco Reveles ("Reveles") for recording

secretary (collectively "challenging candidates"). (Stevens Decl., Ex. B to Pl.'s MSJ ¶ 6). Before the election, Defendant contacted candidates pursuant to a notice stating that candidates would be required to provide a birth certificate, a passport, an alien registration card, or "[a]ny other document that establishes lawful permanent residency that is recognized by the Immigration and Naturalization Service." (*See* De La Torre Decl., Ex. A to Pl.'s MSJ at 1, ECF No. 31-7). Additionally, all candidates were required to fill out a questionnaire. (*See generally* De La Torre Decl., Ex. A to Pl.'s MSJ, ECF No. 31-9 ("Questionnaires")). Defendant required candidates to then meet with election judges, including appointed election judge Robert Vigil ("Vigil"), so that the judges could measure the candidates' qualifications. (*See* De La Torre Decl., Ex. A to Pl.'s MSJ at 94, ECF No. 31-4).

In his questionnaire, Trujillo answered "yes" to whether he was able to read and write basic English. (Questionnaires at 4). Vigil believed that Trujillo was not fluent in English and, at the judges' meeting, administered his own literacy test by asking Trujillo to read a provision of the Constitution out loud and interpret it. (*See generally* De La Torre Decl., Ex. A to Pl.'s MSJ, ECF No. 31-8 ("Vigil Interview")). After Trujillo had difficulty with this task, Vigil indicated to the other judges that Trujillo did not meet the literacy requirement. (*Id.*). Another judge asked Vigil to allow Trujillo another chance, and after Trujillo had difficulty again, Vigil maintained that Trujillo did not meet the requirements. (*Id.*). No other candidate was asked to demonstrate literacy. (Stevens Decl. ¶ 7).

Subsequently, Vigil asked all three challenging candidates for their identification. (Stevens Decl. ¶ 8). Each challenging candidate presented his driver's license, which the judges accepted as adequate. (*Id.*). Suddenly, Vigil stated that the driver's licenses were no longer adequate and directed only Trujillo and Reveles to retrieve their birth certificates from home as additional identification. (*Id.* ¶ 9). Vigil provided them a three-hour timeframe to retrieve the birth certificates. (*Id.*).

Ten minutes after Trujillo left, Vigil declared Trujillo disqualified. (*Id.* ¶ 10). Reveles was then disqualified for failing to present proof of residency, and both Stevens and Reveles were disqualified for failing to meet a work and attendance requirement. (*See* De La Torre Decl., Ex. A to Pl.'s MSJ, ECF No. 31-9). Because all three challenging candidates were disqualified, the incumbent candidates won the elections. (*See* De La Torre Decl., Ex. A to Pl.'s MSJ, ECF No. 31-8).

In the instant Motion, Plaintiff seeks summary judgment for Defendant's violation of the LMRDA. (Pl.'s MSJ 2:9-10). Moreover, if the Court grants summary judgment in favor of Plaintiff, Plaintiff asks the Court to declare void the April 18, 2015 election and order a new election to be conducted under Plaintiff's supervision. (*Id.* 2:10-14).

## II. <u>LEGAL STANDARD</u>

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come

forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.

The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III. DISCUSSION

Plaintiff seeks summary judgment on the single allegation of a violation of section 401(e) of the LMRDA. (*See generally* Compl., ECF No. 1). Specifically, Plaintiff seeks summary judgment because Defendant "violated [the LMRDA] when it disqualified Trujillo by unreasonably applying literacy and proof-of-residency requirements." (Pl.'s MSJ 10:14–16). Conversely, Defendant alleges in its Motion for Summary Judgment that Plaintiff cannot show a violation of the LMRDA because "there was no violation . . . when Trujillo was disqualified for failing to present proof that he met the permanent resident/lawfully employable requirement." (Def.'s MSJ 12:9–11). Because Defendant's Motion is the direct converse of Plaintiff's Motion, a resolution of the claim resolves both Motions.

Section 481(e) states that "[i]n any election required by this section which is to be held by secret ballot a reasonable opportunity shall be given for the nomination of candidates and every member in good standing shall be eligible to be a candidate and to hold office" subject to "reasonable qualifications uniformly imposed." 29 U.S.C. § 481(e). Reasonable qualifications "must be considered in light of the democratic aim of the statute" and "the Supreme Court has made clear that qualifications are to be gauged 'in the light of all the circumstances of the particular case.'" *Chao v. Bremerton Metal Trades Council, AFL-CIO*, 294 F.3d 1114, 1122 (9th Cir. 2002) (quoting *Local 3489, United Steelworkers v. Usery*, 429 U.S. 305, 313, 97 S. Ct. 611 (1977)).

Congress intended the purpose of the LMRDA to "protect the rights of rank-and-file members to participate fully in the operations of their union," *Wirtz v. Hotel, Motel & Club Employees Union, Local 6*, 391 U.S. 492, 497 (1968), and "to provide a fair election and

guarantee membership participation," *Amer. Fed. of Musicians v. Wittstein*, 379 U.S. 171, 182 (1964). Moreover, "Congress plainly did not intend that the authorization in [section 481(e)] of 'reasonable qualifications uniformly imposed' should be given broad reach." *Wirtz*, 391 U.S. at 499. The Supreme Court holds that "reasonable qualification" should be narrowly construed because "[u]nduly restrictive candidacy qualifications can result in the abuses of entrenched leadership that the LMRDA was expressly enacted to curb." *Local 6*, 391 U.S. at 499; *see* 29 C.F.R. § 452.36.

The LMRDA includes an enforcement scheme that permits courts to void union elections that are in violation. 28 U.S.C. § 482. Once a union member has exhausted internal union remedies, and the Secretary of Labor investigates the complaint, then the Secretary may sue in federal court for an order annulling the challenged election and requiring a new election under the Secretary's supervision. *Id.* at § 482(b). The Secretary must prove by a preponderance of the evidence that a violation occurred and that the violation may have affected the outcome of the election. *Reich v. Local 89, Laborers' Int'l Union of N. Am., AFL-CIO*, 36 F.3d 1470, 1474 (9th Cir. 1994). The instant action is at the third step in this process.

In order to determine whether a violation occurred, the Court must examine whether the qualification at issue is reasonable in light of the purpose of the LMRDA to ensure fair and democratic practices in unions. *Local 3489, United Steelworkers of Amer. v. Usery*, 429 U.S. 305, 309 (1977); *see also Local 6*, 391 U.S. at 497-498; *Wirtz v. Local 153, Glass Bottle Blowers Assn.*, 389 U.S. 463, 468-70. In assessing eligibility restrictions, the regulations promulgated by the Secretary of Labor provide the following for evaluating reasonableness:

> [R]estrictions on the right of members to be candidates must be closely scrutinized to determine whether they serve union purposes of such importance to justify subordinating the right of the individual member to seek office and the interest of the membership in free, democratic choice of leaders.

29 C.F.R. § 452.35.[1] Moreover, the Ninth Circuit has found LMRDA violations where unions unreasonably apply a facially neutral requirement. *Local 89*, 36 F.3d at 1474, 1478 ("While a particular procedure may not on its face violate the requirements of the LMRDA, its application in a given instance may make nominations so difficult as to deny members a reasonable opportunity to nominate.").

Here, two of Defendant's requirements are at issue in potentially invalidating the election: the literacy requirement and the residency requirement. The Court begins with the literacy requirement.

**A. Literacy Requirement**

Plaintiff states that Defendant violated the LMRDA "because the literacy test it conducted was not applied uniformly." (Pl.'s MSJ 12:10–11). Specifically, "Trujillo was the only candidate [ ] Vigil subjected to a literacy test" and Vigil had "no specific or objective criteria for determining when a candidate would be forced to prove literacy to [Vigil's] satisfaction." (*Id.* 12:11–13); (*see* Decl. of Robert Vigil ¶¶ 8–17, ECF No. 36). Moreover, Plaintiff states that Vigil implemented this test without giving Trujillo notice. (Pl.'s MSJ 12:19).

The enforcement regulations of the LMRDA state that "[q]ualifications must be specific and objective. They must contain specific standards of eligibility by which any member can determine in advance whether or not he is qualified to be a candidate." 29 C.F.R. § 452.53.

Here, Defendant essentially concedes that the literacy test implemented to only Trujillo was unreasonable. Specifically, Defendant states "[s]ection 481(e) requires that the literacy *qualification* be reasonable; it does not require that the *test* used to determine literacy be

---

[1] The Ninth Circuit in *Chao v. Bremerton Metal Trades Council, AFL-CIO*, 294 F.3d 1114, 1122 (9th Cir. 2002), held that this regulation is applicable to elections governed by § 481(e) of the LMRDA. Additionally, "although this regulation interpreting reasonableness is not binding on [the court], [the Ninth Circuit is] persuaded it is useful in applying § 481(e)." *Chao*, 294 F.3d at 1122 n.5.

reasonable." (Resp. 15:14–16) (emphasis in original). In asserting this, Defendant is seemingly arguing that because the Constitution is reasonable in requiring a literacy qualification, the vehicle used to enforce the qualification need not be reasonable. This argument is unpersuasive and directly contradicts the LMRDA goals of uniformity and access. *See* 29 C.F.R. § 452.53. Notably, Vigil himself admits that he only applied the literacy test to Trujillo, claiming that he was aware the other candidates were literate from knowing them personally. This rationale highlights the lack of objective measure applied to the literacy requirement. Because Defendant effectively does not contest that the literacy test was unreasonable, therefore precluding the issue from being a genuine issue of material fact, the Court grants summary judgment in favor of Plaintiff.

Section 482 states that if a court finds "upon a preponderance of the evidence" that a "violation of section 481 . . . may have affected the outcome of an election, the court shall declare the election, if any, to be void and direct the conduct of a new election under supervision of the Secretary." 29 U.S.C. § 482(c). Because the Court finds that Defendant violated § 481 in implementing this unreasonable literacy requirement, there is no need for the Court to discuss the alleged infractions arising from the residency requirement.

Accordingly, the Court grants Plaintiff's Motion for Summary Judgment pursuant to Defendant's unreasonable literacy requirement. The Court declares the April 18, 2015 election for the office of vice president void and the Court directs that a new election be conducted for the office of vice president under the Plaintiff's supervision as dictated by 29 U.S.C. § 482(c).[2]

---

[2] Notably, Defendant does not address the literacy requirement argument in its Motion for Summary Judgment, stating in a footnote that "[i]t is [Defendant's] position that if Trujillo was properly disqualified because of his failure to meet the permanent resident/lawfully employable requirement, there was no violation of the LMRDA." (Def.'s MSJ 6:26–28, ECF No. 40). The Court is not persuaded by this argument as the two infractions are independent of each other. All the Court needs to find is Defendant's unreasonableness under § 481 in one aspect of the election in order to invalidate it pursuant to § 482. Because the Court finds Defendant acted unreasonably in implementing its literacy requirement on only Trujillo, the election may still be invalidated. As such, due to the Court finding in favor of Plaintiff's Motion for Summary Judgment, Defendant's Cross Motion for Summary Judgment is **DENIED**.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment, (ECF No. 35), is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's Cross Motion for Summary Judgment, (ECF No. 40), is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's April 18, 2015 election for the office of vice president is void and that a new election be conducted for the office of vice president under Plaintiff's supervision.

The Clerk of the Court shall enter judgment accordingly.

**DATED** this __25__ day of August, 2017.

_____
Gloria M. Navarro, Chief Judge
United States District Judge