# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

R. ALEXANDER ACOSTA, Secretary of Labor, United States Department of Labor,

        Plaintiff,

vs.

LOCAL 872, LABORERS INTERNATIONAL UNION OF NORTH AMERICA,

        Defendants.

Case No.: 2:15-cv-01979-GMN-CWH

**ORDER**

Pending before the Court is Plaintiff R. Alexander Acosta, Secretary of Labor for the United States Department of Labor's ("Plaintiff's") Motion for Reconsideration and Opposition to Defendant's Motion to Alter or Amend Judgment or Alternatively to Stay Enforcement of Judgment ("Plaintiff's MFR"), (ECF No. 59). Defendant Local 872, Laborers International Union of North America ("Defendant") filed a Response, (ECF No. 63), and Plaintiff filed a Reply, (ECF No. 66).

Also pending before the Court is Defendant's Motion to Alter or Amend Judgment or Alternatively to Stay Enforcement of Judgment ("Defendant's MTAJ"), (ECF No. 58). Plaintiff filed a Response, (ECF No. 60), and Defendant failed to file a Reply. For the reasons discussed below, the Court **GRANTS in part** and **DENIES in part** Plaintiff's Motion for Reconsideration so as to clarify and supplement the Court's prior order and **DENIES** Defendant's Motion to Alter or Amend Judgment or Alternatively to Stay Enforcement of Judgment.

## I. BACKGROUND

This case arises out of Defendant's 2015 election for union officers. Defendant is a labor organization recognized by the Labor-Management Reporting and Disclosure Act of 1959, as amended, 29 U.S.C. § 401, *et seq.* (the "LMRDA"). Defendant is located in Nevada and Arizona, and seventy percent of the members are Hispanic, with approximately thirty-five percent speaking only Spanish. (De La Torre Decl., Ex. A to Pl.'s Mot. for Summ. J. ("MSJ") at 3, ECF No. 31-3); (Stevens Decl., Ex. B to Pl.'s MSJ ¶ 2, ECF No. 31-10).

Customarily, union members who seek to hold office must meet qualifications listed in Article V of the Laborers' International Uniform Local Constitution (the "Constitution"), which include literacy and residency. (*See* De La Torre Decl., Ex. 2 to Pl.'s MSJ at 90–92, ECF No. 31-4). Regarding literacy, the Constitution only requires that a candidate "[s]hall be literate." (*Id.* at 90). A resource for interpreting the Constitution titled "The Local Union Officer Elections: A Guide for Local Union Judges of Election, February 2013" (the "Election Guide"), (ECF Nos. 31-5, 31-6), provides an example question testing literacy in a sample candidate questionnaire. The sample questionnaire simply asks if the nominee can "read and write basic English." (Election Guide at 36, ECF No. 31-6). Beyond this guidance, Defendant lacks standardized criteria for testing literacy. (*See* De La Torre Decl., Ex. 5 to Pl.'s MSJ at 6, ECF No. 31-8). Concerning residency, the Constitution requires that a candidate "[s]hall be a lawful permanent resident and shall be lawfully employable under the laws of the United States and Canada." (*See* De La Torre Decl., Ex. 2 to Pl.'s MSJ at 90, ECF No. 31-4). The Election Guide further specifies:

> In order to run for office, a member must: (c) be a lawful permanent resident and shall be lawfully employable under the laws of the United States and Canada; this qualification may be established by presenting one of the following: 1) Birth Certificate . . . ; 2) U.S. Passport . . . ; 3) Alien Registration Receipt Card with photograph (green card); 4) A Certificate of Naturalization; or, 5) such other documentation as the Judges may deem appropriate.

(Election Guide at 21, ECF No. 31-5).

On April 18, 2015, Defendant held elections for the positions of president, vice president, and secretary-treasurer/business manager ("secretary"). (De La Torre Decl., Ex. 2 to Pl.'s MSJ at 93, ECF No. 31-4). The candidates competing for the positions were either incumbents or challengers; the challengers included Martin Trujillo ("Trujillo") for vice president, John Stevens ("Stevens") for secretary, and Marco Reveles ("Reveles") for recording secretary (collectively "challenging candidates"). (Stevens Decl., Ex. B to Pl.'s MSJ ¶ 6). Before the election, Defendant contacted candidates pursuant to the Constitution's notice requirement stating that candidates would be required to provide a birth certificate, a passport, an alien registration card, or "[a]ny other document that establishes lawful permanent residency that is recognized by the Immigration and Naturalization Service." (*See* De La Torre Decl., Ex. 4 to Pl.'s MSJ at 1, ECF No. 31-7). Additionally, all candidates were required to fill out a questionnaire. (*See generally* De La Torre Decl., Ex. 6 to Pl.'s MSJ, ECF No. 31-9 ("Questionnaires")). Defendant required candidates to then meet with election judges, including appointed election judge Robert Vigil ("Vigil"), so that the judges could measure the candidates' qualifications. (*See* De La Torre Decl., Ex. 2 to Pl.'s MSJ at 94, ECF No. 31-4).

In his questionnaire, Trujillo answered "yes" to whether he was able to read and write basic English. (Questionnaires at 4). Vigil believed that Trujillo was not fluent in English and, at the judges' meeting, administered his own literacy test by asking Trujillo to read a provision of the Constitution out loud and interpret it. (*See* generally De La Torre Decl., Ex. 5 to Pl.'s MSJ, ECF No. 31-8 ("Vigil Interview")). After Trujillo had difficulty with this task, Vigil indicated to the other judges that Trujillo did not meet the literacy requirement. (*Id.*). Another judge asked Vigil to allow Trujillo another chance, and after Trujillo had difficulty again, Vigil maintained that Trujillo did not meet the requirements. (*Id.*). No other candidate was asked to demonstrate literacy. (Stevens Decl. ¶ 7).

Subsequently, Vigil asked all three challenging candidates for their identification. (Stevens Decl. ¶ 8). Each challenging candidate presented his driver's license, which the judges accepted as adequate. (*Id.*). Suddenly, Vigil stated that the driver's licenses were no longer adequate and directed only Trujillo and Reveles to retrieve their birth certificates from home as additional identification. (*Id.* ¶ 9). Vigil provided them a three-hour timeframe to retrieve the birth certificates. (*Id.*).

Ten minutes after Trujillo left, Vigil declared Trujillo disqualified. (*Id.* ¶ 10). Reveles was then disqualified for failing to present proof of residency, and both Stevens and Reveles were disqualified for failing to meet a work and attendance requirement. (*See* Questionnaires). Because all three challenging candidates were disqualified, the incumbent candidates won the elections. (*See* De La Torre Decl., Ex. 5 to Pl.'s MSJ, ECF No. 31-8).

On February 6, 2017, Plaintiff filed a Motion for Summary Judgment for Defendant's violation of the LMRDA. (Pl.'s MSJ, ECF No. 31). On March 10, 2017, Defendant filed a Cross Motion for Summary Judgment arguing Plaintiff could not show that it violated the LMRDA. (Def.'s MSJ, ECF No. 40). On August 25, 2017, the Court granted Plaintiff's Motion for Summary Judgment and denied Defendant's Cross Motion for Summary Judgment (the "Prior Order"). (Order 9:17–18, ECF No. 56). In the Prior Order, the Court voided Defendant's April 18, 2015 election for the office of vice president and ordered that a new vice-presidential election be conducted under Plaintiff's supervision. (*Id.* 9:18–20).

Defendant filed its Motion to Amend/Correct or Alternatively to Stay Enforcement of Judgment on September 25, 2017, (ECF No. 58), and Plaintiff filed its Motion for Reconsideration on October 10, 2017, (ECF No. 59).

## II.  LEGAL STANDARD

"[A] motion for reconsideration should not be granted, absent highly unusual circumstances." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003) (citation omitted).

Reconsideration is appropriate where: (1) the court is presented with newly discovered evidence, (2) the court committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law. *School Dist. No. 1J, Multnomah County v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). However, a motion for reconsideration is not a mechanism for rearguing issues presented in the original filings. *Backlund v. Barnhart*, 778 F.2d 1386, 1388 (9th Cir. 1985). Furthermore, although the court enjoys discretion in granting or denying a motion under this rule, "amending a judgment after its entry remains an extraordinary remedy which should be used sparingly." *Allstate Ins. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011) (internal quotation marks and citation omitted).

## III. DISCUSSION

In Plaintiff's instant Motion, Plaintiff asks the Court to reconsider its decision to not address whether Trujillo was properly disqualified based on residency. (Pl.'s MFR 3:10–12, ECF No. 59). Additionally, Defendant seeks in its Motion to amend the Court's judgment on its Prior Order "to reflect that Trujillo was properly disqualified [from] running for office in 2015 . . ." (Def.'s MTAJ. 2:20–21, ECF No. 58). The Court will first address Plaintiff's Motion for Reconsideration and then will turn to Defendant's Motion to Alter or Amend Judgment or in the Alternative to Stay Enforcement of Judgment.

### A. Plaintiff's Motion for Reconsideration

In its Motion, Plaintiff asks the Court to reconsider its decision to not address whether Trujillo was properly disqualified based on residency under Rule 60(b). (Pl.'s MFR 3:10–12, ECF No. 59). Specifically, Plaintiff asserts that the Court incorrectly decided against addressing whether Defendant's residency requirement also violated the LMRDA. (*Id.* 7:16–18). Plaintiff argues that if Trujillo was legitimately disqualified based on Defendant's residency requirement, then the improper disqualification based on Defendant's literacy requirement could not have affected the outcome of the election. (*Id.* 7:27–8:2). Accordingly,

the Court could not have ordered a new supervised election. (*Id.* 7:1–3). Thus, Plaintiff argues that the Court can only order a new supervised election if Defendant's residency requirement violated the LMRDA. (*Id.* 8:6–12).

Defendant agrees to Plaintiff's reconsideration of the residency requirement. (Def.'s Resp. 7:3–4, ECF No. 63). However, Defendant argues that the evidence provided in Plaintiff's Motion for Summary Judgment does not support Plaintiff's argument that the residency requirement was not reasonably applied. (*Id.* 7:8–9; Pl.'s MSJ 13:1–2, ECF No. 31). Defendant asserts that Trujillo was disqualified because he presented a California driver's license instead of a "United States passport, resident alien card, or other document approved by the Attorney General; or . . . a combination of other documents such as a driver's license and social security card . . . ." (Def.'s Resp. 7:27–8:3) (quoting *Chamber of Commerce of the U.S. v. Whiting*, 563 U.S. 582, 589 (2011)). Further, Defendant argues that Trujillo was aware of the rule requiring him to proffer proof of residency "immediately after the close of nominations." (*Id.* 8:21–22). Thus, Defendant concludes that because Trujillo did not provide approved documentation to fulfill the residency requirement, it did not violate the LMRDA in disqualifying Trujillo. (*Id.* 8:25–9:2).

Plaintiff argued in its prior briefings that Defendant did not apply the residency requirement "in a reasonable and uniform way." (Pl.'s MSJ 13:25–26). Plaintiff further asserts that Defendant did not provide adequate notice to Trujillo as to the particular time at which he was required to furnish proof of residency. (*Id.* 13:26–27). Plaintiff contends that Vigil "created an on-the-spot requirement" that all incumbent candidates provide proof of residency at the time of their interview. (*Id.* 13:27–14:2). Moreover, in its Reply to Defendant's Cross Motion for Summary Judgment, Plaintiff argues the rule of requiring proof of residency "at the close of nominations" does not exist. (Pl.'s Reply Supp. Mot. Summ. J. 5:10, ECF No. 43).

While the Court finds neither clear error nor manifest injustice in the reasoning of its prior Order, the Court will grant Plaintiff's Motion for Reconsideration insomuch as supplementing the Prior Order by analyzing the residency requirement. The Laborers International Uniform Local Constitution ("Constitution") states that when nominations have been completed, the Judge of Election will announce the time and place when she will examine the candidates to ensure each possesses the mandatory qualifications. (De La Torre Decl., Ex. 2 to Pl.'s MSJ at 94, ECF No. 31-4).

The Court is not persuaded by Defendant's argument that Trujillo was properly disqualified because he did not conform to Article V of the Constitution, which governs literacy and residency requirements. (*See* De La Torre Decl., Ex. 2 to Pl.'s MSJ at 90–92). Although Defendant attempts to argue that the challenging candidates were required to present proof of residency "immediately after the close of nominations," (Def.'s Resp. 8:9–11, ECF No. 63), this argument distorts the words of the Constitution. The Constitution actually reads that "[a]ll of the qualifications for office must be present *at the time of nominations*. . . ." (De La Torre Decl., Ex. 2 to Pl.'s MSJ at 92) (emphasis added). Further, as stated in the Court's Prior Order, "Section 481(e) states that '[i]n any election . . . a reasonable opportunity shall be given for the nomination of candidates and every member in good standing shall be eligible to be a candidate and to hold office' subject to 'reasonable qualifications uniformly imposed.' 29 U.S.C. § 481(e)." (Prior Order 6:14–17, ECF No. 56).

Here, Defendant violates Section 481(e) because its residency requirement was not "uniformly imposed." Whereas other challengers were disqualified during the same election for failing to satisfy the work attendance requirement, (*see* Questionnaires at 3, 7, ECF No. 31-9), Trujillo was the only candidate disqualified for failing to satisfy Defendant's arbitrary application of the residency requirement. (*See id.* at 3, 5, 7).

Similarly, in *Wirtz v. National Maritime Union of America*, 399 F.2d 544, 548 (2d Cir. 1968), the Second Circuit held that a union violated Section 481(e) because it only imposed its requirement to personally secure "official nominating forms and endorsements of fellow members" on some challengers and disqualified the challengers when they did not satisfy it. Further, the Second Circuit found that the union's incongruous application of this form securing requirement "deprived its members of a reasonable opportunity to nominate and support candidates. . . ." and violated "necessary protections of the public interest as well as of the rights and interests of union members." *Id.* at 550 (quoting *Wirtz v. Hotel, Motel & Club Emps. Union*, 391 U.S. 492, 497 (1968)). Likewise, Defendant violated Section 481(e) because Vigil gave Trujillo until the end of business day to retrieve his birth certificate, but disqualified Trujillo only ten minutes later and outside of Trujillo's presence. (Stevens Decl., Ex. B to Pl.'s MSJ ¶ 10, ECF No. 31-10). Not only did Defendant fail to uniformly impose this residency requirement on all of its candidates, but Defendant also unilaterally altered the notice provided to Trujillo while he attempted to meet the residency requirement. (*Id.* at ¶¶ 9, 10). Thus, because Vigil provided Trujillo a specific timeframe to present his residency qualifications and, without notice, disqualified only Trujillo, Defendant violated Section 401(e) and in turn unfairly affected the outcome of the election.

Moreover, Article V, Section 10 ("Article V") of the Constitution is not determinative of a deadline to present a candidate's qualifications. Whereas Article V of the Constitution states all candidates should possess the required qualifications at the time they run for office, (De La Torre Decl., Ex. 2 to Pl.'s MSJ at 92), Article VI, Section 2, Subsection B ("Article VI") gives the Judge of Election authority to announce the time and place at which candidates will need to furnish proof of said qualifications. (*Id.* at 94). With the authority of Article VI, Vigil provided Trujillo three hours to retrieve proper documentation to show proof of residency. When Vigil disqualified Trujillo ten minutes into the three hours he had allotted Trujillo to retrieve proper

documentation, Vigil did not apply the residency requirement uniformly, but rather unfairly and unreasonably.

Accordingly, the Court finds that Defendant unfairly administered the residency requirement. Thus, consistent with its Prior Order, the Court holds that the 2015 election is void due to the literacy requirement, [1] and further holds that the 2015 election is void due to the residency requirement.

### B. Defendant's Motion to Amend the Judgment

In its Motion, Defendant requests that the Court amend its Judgment to "reflect [that] the residency/lawfully employable requirement [was] reasonable and uniformly imposed. . . ." (Def.'s MTAJ 4:2–4, ECF No. 58).[2] Pursuant to the Court's clarification above, and after reviewing Defendant's Motion, the Court denies Defendant's Motion to Alter or Amend Judgment.

### IV. CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Reconsideration, (ECF No. 59), is **GRANTED** as to the residency requirement and **DENIED** as to the literacy requirement.

**IT IS FURTHER ORDERED** that the Court **GRANTS** summary judgment for Plaintiff as to the residency requirement.

**IT IS FURTHER ORDERED** that Defendant's April 18, 2015 election for the office of vice president remains void and that a new election be conducted for the office of vice president under Plaintiff's supervision.

///

///

---

[1] Although Plaintiff argues that the Court should hold that the literacy requirement be waived due to its unconstitutionality, the Court stands by its Prior Order and **DENIES** this request.

[2] In the alternative, Defendant requests that the Court stay the enforcement of the judgment until April 2018. (*Id.* at 8:3–4). However, because the April 2018 elections have passed, Defendant's Motion in the Alternative is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Defendant's Motion to Alter or Amend Judgment or Alternatively to Stay Enforcement of Judgment, (ECF No. 58), is **DENIED**.

**DATED** this __24__ day of September, 2018.

_____
Gloria M. Navarro, Chief Judge
United States District Court