# EXHIBIT 1

Court Orders dated August 25, 2017 (ECF No. 56), September 24, 2018 (ECF No. 69) and Ninth Circuit Court of Appeals Decision (ECF No. 79) dated May 18, 2020

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

R. ALEXANDER ACOSTA, Secretary of ) 
Labor, United States Department of Labor, )
                                              )      Case No.: 2:15-cv-1979-GMN-CWH
              Plaintiff, )
     vs.                    )      **ORDER**
                                           )
LOCAL 872, LABORERS )
INTERNATIONAL UNION OF NORTH )
AMERICA, )
                                         )
              Defendant. )
                                         )

Pending before the Court is the Motion for Summary Judgment, (ECF No. 31), filed by Plaintiff R. Alexander Acosta, Secretary of Labor of the United States Department of Labor ("Plaintiff"). Defendant Local 872, Laborers International Union of North America ("Defendant") filed a Response, (ECF No. 35), and Plaintiff filed a Reply, (ECF No. 43).

Also pending before the Court is the Cross Motion for Summary Judgment, (ECF No. 40), filed by Defendant. Plaintiff filed a Response, (ECF No. 44), and Defendant filed a Reply, (ECF No. 45). For the reasons discussed below, the Court **GRANTS** Plaintiff's Motion for Summary Judgment and **DENIES** Defendant's Cross Motion for Summary Judgment.

## I.     BACKGROUND

This case arises out of Defendant's 2015 election for union officers. Defendant is a labor organization recognized by the Labor-Management Reporting and Disclosure Act of 1959, as amended, 29 U.S.C. § 401, *et seq.* (the "LMRDA"). Defendant is located in Nevada and Arizona, and seventy percent of the members are Hispanic, with approximately thirty-five percent speaking only Spanish. (De La Torre Decl., Ex. A to Pl.'s Mot. for Summ. J. ("MSJ") at 3, ECF No. 31-3); (Stevens Decl., Ex. B to Pl.'s MSJ ¶ 2, ECF No. 31-10).

Case 2:15-cv-01979-GMN-CWH Document 56 Filed 08/23/17 Page 2 of 10

Customarily, union members who seek to hold office must meet qualifications listed in Article V of the Laborers International Uniform Local Constitution (the "Constitution"), which includes literacy and residency. (*See* De La Torre Decl., Ex. A to Pl.'s MSJ at 90-92, ECF No. 31-4). Regarding literacy, the Constitution only requires that a candidate "[s]hall be literate." (*Id.* at 90). A resource for interpreting the Constitution titled "The Local Union Officer Elections: A Guide for Local Union Judges of Election, February 2013" (the "Election Guide"), (ECF Nos. 31-5, 31-6), provides an example question testing literacy in a sample candidate questionnaire. The sample questionnaire simply asks if the nominee can "read and write basic English." (Election Guide at 36, ECF No. 31-6). Beyond this guidance, Defendant lacks standardized criteria for testing literacy. (*See* De La Torre Decl., Ex. A to Pl.'s MSJ at 6, ECF No. 31-8).

Concerning residency, the Constitution requires that a candidate "[s]hall be a lawful permanent resident and shall be lawfully employable under the laws of the United States and Canada." (*See* De La Torre Decl., Ex. A to Pl.'s MSJ at 90, ECF No. 31-4). The Election Guide further specifies:

> In order to run for office, a member must: (c) be a lawful permanent resident and shall be lawfully employable under the laws of the United States and Canada; this qualification may be established by presenting one of the following: 1) Birth Certificate . . . ; 2) U.S. Passport . . . ; 3) Alien Registration Receipt Card with photograph (green card); 4) A Certificate of Naturalization; or, 5) such other documentation as the Judges may deem appropriate.

(Election Guide at 21, ECF No. 31-5).

On April 18, 2015, Defendant held elections for the positions of president, vice president, and secretary-treasurer/business manager ("secretary"). (De La Torre Decl., Ex. A to Pl.'s MSJ at 93, ECF No. 31-4). The candidates competing for the positions were either incumbents or challengers; the challengers included Martin Trujillo ("Trujillo") for vice president, John Stevens ("Stevens") for secretary, and Marco Reveles ("Reveles") for recording

secretary (collectively "challenging candidates"). (Stevens Decl., Ex. B to Pl.'s MSJ ¶ 6). Before the election, Defendant contacted candidates pursuant to a notice stating that candidates would be required to provide a birth certificate, a passport, an alien registration card, or "[a]ny other document that establishes lawful permanent residency that is recognized by the Immigration and Naturalization Service." (*See* De La Torre Decl., Ex. A to Pl.'s MSJ at 1, ECF No. 31-7). Additionally, all candidates were required to fill out a questionnaire. (*See generally* De La Torre Decl., Ex. A to Pl.'s MSJ, ECF No. 31-9 ("Questionnaires")). Defendant required candidates to then meet with election judges, including appointed election judge Robert Vigil ("Vigil"), so that the judges could measure the candidates' qualifications. (*See* De La Torre Decl., Ex. A to Pl.'s MSJ at 94, ECF No. 31-4).

In his questionnaire, Trujillo answered "yes" to whether he was able to read and write basic English. (Questionnaires at 4). Vigil believed that Trujillo was not fluent in English and, at the judges' meeting, administered his own literacy test by asking Trujillo to read a provision of the Constitution out loud and interpret it. (*See generally* De La Torre Decl., Ex. A to Pl.'s MSJ, ECF No. 31-8 ("Vigil Interview")). After Trujillo had difficulty with this task, Vigil indicated to the other judges that Trujillo did not meet the literacy requirement. (*Id.*). Another judge asked Vigil to allow Trujillo another chance, and after Trujillo had difficulty again, Vigil maintained that Trujillo did not meet the requirements. (*Id.*). No other candidate was asked to demonstrate literacy. (Stevens Decl. ¶ 7).

Subsequently, Vigil asked all three challenging candidates for their identification. (Stevens Decl. ¶ 8). Each challenging candidate presented his driver's license, which the judges accepted as adequate. (*Id.*). Suddenly, Vigil stated that the driver's licenses were no longer adequate and directed only Trujillo and Reveles to retrieve their birth certificates from home as additional identification. (*Id.* ¶ 9). Vigil provided them a three-hour timeframe to retrieve the birth certificates. (*Id.*).

Ten minutes after Trujillo left, Vigil declared Trujillo disqualified. (*Id.* ¶ 10). Reveles was then disqualified for failing to present proof of residency, and both Stevens and Reveles were disqualified for failing to meet a work and attendance requirement. (*See* De La Torre Decl., Ex. A to Pl.'s MSJ, ECF No. 31-9). Because all three challenging candidates were disqualified, the incumbent candidates won the elections. (*See* De La Torre Decl., Ex. A to Pl.'s MSJ, ECF No. 31-8).

In the instant Motion, Plaintiff seeks summary judgment for Defendant's violation of the LMRDA. (Pl.'s MSJ 2:9-10). Moreover, if the Court grants summary judgment in favor of Plaintiff, Plaintiff asks the Court to declare void the April 18, 2015 election and order a new election to be conducted under Plaintiff's supervision. (*Id.* 2:10-14).

## II.  **LEGAL STANDARD**

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come

Case 2:13-cv-01979-GMN-CWH Document 56 Filed 08/23/21 Page 5 of 10

forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.

The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III. <u>DISCUSSION</u>

Plaintiff seeks summary judgment on the single allegation of a violation of section 401(e) of the LMRDA. (*See generally* Compl., ECF No. 1). Specifically, Plaintiff seeks summary judgment because Defendant "violated [the LMRDA] when it disqualified Trujillo by unreasonably applying literacy and proof-of-residency requirements." (Pl.'s MSJ 10:14–16). Conversely, Defendant alleges in its Motion for Summary Judgment that Plaintiff cannot show a violation of the LMRDA because "there was no violation . . . when Trujillo was disqualified for failing to present proof that he met the permanent resident/lawfully employable requirement." (Def.'s MSJ 12:9–11). Because Defendant's Motion is the direct converse of Plaintiff's Motion, a resolution of the claim resolves both Motions.

Section 481(e) states that "[i]n any election required by this section which is to be held by secret ballot a reasonable opportunity shall be given for the nomination of candidates and every member in good standing shall be eligible to be a candidate and to hold office" subject to "reasonable qualifications uniformly imposed." 29 U.S.C. § 481(e). Reasonable qualifications "must be considered in light of the democratic aim of the statute" and "the Supreme Court has made clear that qualifications are to be gauged 'in the light of all the circumstances of the particular case.'" *Chao v. Bremerton Metal Trades Council, AFL-CIO*, 294 F.3d 1114, 1122 (9th Cir. 2002) (quoting *Local 3489, United Steelworkers v. Usery*, 429 U.S. 305, 313, 97 S. Ct. 611 (1977)).

Congress intended the purpose of the LMRDA to "protect the rights of rank-and-file members to participate fully in the operations of their union," *Wirtz v. Hotel, Motel & Club Employees Union, Local 6*, 391 U.S. 492, 497 (1968), and "to provide a fair election and

guarantee membership participation," *Amer. Fed. of Musicians v. Wittstein*, 379 U.S. 171, 182 (1964). Moreover, "Congress plainly did not intend that the authorization in [section 481(e)] of 'reasonable qualifications uniformly imposed' should be given broad reach." *Wirtz*, 391 U.S. at 499. The Supreme Court holds that "reasonable qualification" should be narrowly construed because "[u]nduly restrictive candidacy qualifications can result in the abuses of entrenched leadership that the LMRDA was expressly enacted to curb." *Local 6*, 391 U.S. at 499; *see* 29 C.F.R. § 452.36.

The LMRDA includes an enforcement scheme that permits courts to void union elections that are in violation. 28 U.S.C. § 482. Once a union member has exhausted internal union remedies, and the Secretary of Labor investigates the complaint, then the Secretary may sue in federal court for an order annulling the challenged election and requiring a new election under the Secretary's supervision. *Id.* at § 482(b). The Secretary must prove by a preponderance of the evidence that a violation occurred and that the violation may have affected the outcome of the election. *Reich v. Local 89, Laborers' Int'l Union of N. Am., AFL-CIO*, 36 F.3d 1470, 1474 (9th Cir. 1994). The instant action is at the third step in this process.

In order to determine whether a violation occurred, the Court must examine whether the qualification at issue is reasonable in light of the purpose of the LMRDA to ensure fair and democratic practices in unions. *Local 3489, United Steelworkers of Amer. v. Usery*, 429 U.S. 305, 309 (1977); *see also Local 6*, 391 U.S. at 497-498; *Wirtz v. Local 153, Glass Bottle Blowers Assn.*, 389 U.S. 463, 468-70. In assessing eligibility restrictions, the regulations promulgated by the Secretary of Labor provide the following for evaluating reasonableness:

> [R]estrictions on the right of members to be candidates must be closely scrutinized to determine whether they serve union purposes of such importance to justify subordinating the right of the individual member to seek office and the interest of the membership in free, democratic choice of leaders.

Case 2:13-cv-01979-GMN-CWH Document 56 Filed 08/23/21 Page 8 of 10

29 C.F.R. § 452.35.[1] Moreover, the Ninth Circuit has found LMRDA violations where unions unreasonably apply a facially neutral requirement. *Local 89*, 36 F.3d at 1474, 1478 ("While a particular procedure may not on its face violate the requirements of the LMRDA, its application in a given instance may make nominations so difficult as to deny members a reasonable opportunity to nominate.").

Here, two of Defendant's requirements are at issue in potentially invalidating the election: the literacy requirement and the residency requirement. The Court begins with the literacy requirement.

## A. Literacy Requirement

Plaintiff states that Defendant violated the LMRDA "because the literacy test it conducted was not applied uniformly." (Pl.'s MSJ 12:10–11). Specifically, "Trujillo was the only candidate [ ] Vigil subjected to a literacy test" and Vigil had "no specific or objective criteria for determining when a candidate would be forced to prove literacy to [Vigil's] satisfaction." (*Id.* 12:11–13); (*see* Decl. of Robert Vigil ¶¶ 8–17, ECF No. 36). Moreover, Plaintiff states that Vigil implemented this test without giving Trujillo notice. (Pl.'s MSJ 12:19).

The enforcement regulations of the LMRDA state that "[q]ualifications must be specific and objective. They must contain specific standards of eligibility by which any member can determine in advance whether or not he is qualified to be a candidate." 29 C.F.R. § 452.53.

Here, Defendant essentially concedes that the literacy test implemented to only Trujillo was unreasonable. Specifically, Defendant states "[s]ection 481(e) requires that the literacy *qualification* be reasonable; it does not require that the *test* used to determine literacy be

---

[1] The Ninth Circuit in *Chao v. Bremerton Metal Trades Council, AFL-CIO*, 294 F.3d 1114, 1122 (9th Cir. 2002), held that this regulation is applicable to elections governed by § 481(e) of the LMRDA. Additionally, "although this regulation interpreting reasonableness is not binding on [the court], [the Ninth Circuit is] persuaded it is useful in applying § 481(e)." *Chao*, 294 F.3d at 1122 n.5.

reasonable." (Resp. 15:14–16) (emphasis in original). In asserting this, Defendant is seemingly arguing that because the Constitution is reasonable in requiring a literacy qualification, the vehicle used to enforce the qualification need not be reasonable. This argument is unpersuasive and directly contradicts the LMRDA goals of uniformity and access. *See* 29 C.F.R. § 452.53. Notably, Vigil himself admits that he only applied the literacy test to Trujillo, claiming that he was aware the other candidates were literate from knowing them personally. This rationale highlights the lack of objective measure applied to the literacy requirement. Because Defendant effectively does not contest that the literacy test was unreasonable, therefore precluding the issue from being a genuine issue of material fact, the Court grants summary judgment in favor of Plaintiff.

Section 482 states that if a court finds "upon a preponderance of the evidence" that a "violation of section 481 . . . may have affected the outcome of an election, the court shall declare the election, if any, to be void and direct the conduct of a new election under supervision of the Secretary." 29 U.S.C. § 482(c). Because the Court finds that Defendant violated § 481 in implementing this unreasonable literacy requirement, there is no need for the Court to discuss the alleged infractions arising from the residency requirement.

Accordingly, the Court grants Plaintiff's Motion for Summary Judgment pursuant to Defendant's unreasonable literacy requirement. The Court declares the April 18, 2015 election for the office of vice president void and the Court directs that a new election be conducted for the office of vice president under the Plaintiff's supervision as dictated by 29 U.S.C. § 482(c).[2]

---

[2] Notably, Defendant does not address the literacy requirement argument in its Motion for Summary Judgment, stating in a footnote that "[i]t is [Defendant's] position that if Trujillo was properly disqualified because of his failure to meet the permanent resident/lawfully employable requirement, there was no violation of the LMRDA." (Def.'s MSJ 6:26–28, ECF No. 40). The Court is not persuaded by this argument as the two infractions are independent of each other. All the Court needs to find is Defendant's unreasonableness under § 481 in one aspect of the election in order to invalidate it pursuant to § 482. Because the Court finds Defendant acted unreasonably in implementing its literacy requirement on only Trujillo, the election may still be invalidated. As such, due to the Court finding in favor of Plaintiff's Motion for Summary Judgment, Defendant's Cross Motion for Summary Judgment is **DENIED**.

## IV.    <u>CONCLUSION</u>

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment, (ECF No. 35), is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's Cross Motion for Summary Judgment, (ECF No. 40), is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's April 18, 2015 election for the office of vice president is void and that a new election be conducted for the office of vice president under Plaintiff's supervision.

The Clerk of the Court shall enter judgment accordingly.

**DATED** this __25__ day of August, 2017.

_____

Gloria M. Navarro, Chief Judge
United States District Judge

Page 10 of 10

Case 2:15-cv-01979-GMN-CWH   Document 69   Filed 09/24/18   Page 1 of 10

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

R. ALEXANDER ACOSTA, Secretary of Labor, United States Department of Labor,

Plaintiff,

vs.

LOCAL 872, LABORERS INTERNATIONAL UNION OF NORTH AMERICA,

Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: 2:15-cv-01979-GMN-CWH

**ORDER**

Pending before the Court is Plaintiff R. Alexander Acosta, Secretary of Labor for the United States Department of Labor's ("Plaintiff's") Motion for Reconsideration and Opposition to Defendant's Motion to Alter or Amend Judgment or Alternatively to Stay Enforcement of Judgment ("Plaintiff's MFR"), (ECF No. 59). Defendant Local 872, Laborers International Union of North America ("Defendant") filed a Response, (ECF No. 63), and Plaintiff filed a Reply, (ECF No. 66).

Also pending before the Court is Defendant's Motion to Alter or Amend Judgment or Alternatively to Stay Enforcement of Judgment ("Defendant's MTAJ"), (ECF No. 58). Plaintiff filed a Response, (ECF No. 60), and Defendant failed to file a Reply. For the reasons discussed below, the Court **GRANTS in part** and **DENIES in part** Plaintiff's Motion for Reconsideration so as to clarify and supplement the Court's prior order and **DENIES** Defendant's Motion to Alter or Amend Judgment or Alternatively to Stay Enforcement of Judgment.

## I.  BACKGROUND

This case arises out of Defendant's 2015 election for union officers.  Defendant is a labor organization recognized by the Labor-Management Reporting and Disclosure Act of 1959, as amended, 29 U.S.C. § 401, *et seq.* (the "LMRDA").  Defendant is located in Nevada and Arizona, and seventy percent of the members are Hispanic, with approximately thirty-five percent speaking only Spanish. (De La Torre Decl., Ex. A to Pl.'s Mot. for Summ. J. ("MSJ") at 3, ECF No. 31-3); (Stevens Decl., Ex. B to Pl.'s MSJ ¶ 2, ECF No. 31-10).

Customarily, union members who seek to hold office must meet qualifications listed in Article V of the Laborers' International Uniform Local Constitution (the "Constitution"), which include literacy and residency. (*See* De La Torre Decl., Ex. 2 to Pl.'s MSJ at 90–92, ECF No. 31-4).  Regarding literacy, the Constitution only requires that a candidate "[s]hall be literate." (*Id.* at 90).  A resource for interpreting the Constitution titled "The Local Union Officer Elections: A Guide for Local Union Judges of Election, February 2013" (the "Election Guide"), (ECF Nos. 31-5, 31-6), provides an example question testing literacy in a sample candidate questionnaire.  The sample questionnaire simply asks if the nominee can "read and write basic English." (Election Guide at 36, ECF No. 31-6).  Beyond this guidance, Defendant lacks standardized criteria for testing literacy. (*See* De La Torre Decl., Ex. 5 to Pl.'s MSJ at 6, ECF No. 31-8).  Concerning residency, the Constitution requires that a candidate "[s]hall be a lawful permanent resident and shall be lawfully employable under the laws of the United States and Canada." (*See* De La Torre Decl., Ex. 2 to Pl.'s MSJ at 90, ECF No. 31-4).  The Election Guide further specifies:

> In order to run for office, a member must: (c) be a lawful permanent resident and shall be lawfully employable under the laws of the United States and Canada; this qualification may be established by presenting one of the following: 1) Birth Certificate . . . ; 2) U.S. Passport . . . ; 3) Alien Registration Receipt Card with photograph (green card); 4) A Certificate of Naturalization; or, 5) such other documentation as the Judges may deem appropriate.

(Election Guide at 21, ECF No. 31-5).

On April 18, 2015, Defendant held elections for the positions of president, vice president, and secretary-treasurer/business manager ("secretary"). (De La Torre Decl., Ex. 2 to Pl.'s MSJ at 93, ECF No. 31-4).  The candidates competing for the positions were either incumbents or challengers; the challengers included Martin Trujillo ("Trujillo") for vice president, John Stevens ("Stevens") for secretary, and Marco Reveles ("Reveles") for recording secretary (collectively "challenging candidates"). (Stevens Decl., Ex. B to Pl.'s MSJ ¶ 6). Before the election, Defendant contacted candidates pursuant to the Constitution's notice requirement stating that candidates would be required to provide a birth certificate, a passport, an alien registration card, or "[a]ny other document that establishes lawful permanent residency that is recognized by the Immigration and Naturalization Service." (*See* De La Torre Decl., Ex. 4 to Pl.'s MSJ at 1, ECF No. 31-7).  Additionally, all candidates were required to fill out a questionnaire. (*See generally* De La Torre Decl., Ex. 6 to Pl.'s MSJ, ECF No. 31-9 ("Questionnaires")).  Defendant required candidates to then meet with election judges, including appointed election judge Robert Vigil ("Vigil"), so that the judges could measure the candidates' qualifications. (*See* De La Torre Decl., Ex. 2 to Pl.'s MSJ at 94, ECF No. 31-4).

In his questionnaire, Trujillo answered "yes" to whether he was able to read and write basic English. (Questionnaires at 4).  Vigil believed that Trujillo was not fluent in English and, at the judges' meeting, administered his own literacy test by asking Trujillo to read a provision of the Constitution out loud and interpret it. (*See* generally De La Torre Decl., Ex. 5 to Pl.'s MSJ, ECF No. 31-8 ("Vigil Interview")).  After Trujillo had difficulty with this task, Vigil indicated to the other judges that Trujillo did not meet the literacy requirement. (*Id.*).  Another judge asked Vigil to allow Trujillo another chance, and after Trujillo had difficulty again, Vigil maintained that Trujillo did not meet the requirements. (*Id.*).  No other candidate was asked to demonstrate literacy. (Stevens Decl. ¶ 7).

Subsequently, Vigil asked all three challenging candidates for their identification. (Stevens Decl. ¶ 8).  Each challenging candidate presented his driver's license, which the judges accepted as adequate. (*Id.*).  Suddenly, Vigil stated that the driver's licenses were no longer adequate and directed only Trujillo and Reveles to retrieve their birth certificates from home as additional identification. (*Id.* ¶ 9).  Vigil provided them a three-hour timeframe to retrieve the birth certificates. (*Id.*).

Ten minutes after Trujillo left, Vigil declared Trujillo disqualified. (*Id.* ¶ 10).  Reveles was then disqualified for failing to present proof of residency, and both Stevens and Reveles were disqualified for failing to meet a work and attendance requirement. (*See* Questionnaires). Because all three challenging candidates were disqualified, the incumbent candidates won the elections. (*See* De La Torre Decl., Ex. 5 to Pl.'s MSJ, ECF No. 31-8).

On February 6, 2017, Plaintiff filed a Motion for Summary Judgment for Defendant's violation of the LMRDA. (Pl.'s MSJ, ECF No. 31).  On March 10, 2017, Defendant filed a Cross Motion for Summary Judgment arguing Plaintiff could not show that it violated the LMRDA. (Def.'s MSJ, ECF No. 40).  On August 25, 2017, the Court granted Plaintiff's Motion for Summary Judgment and denied Defendant's Cross Motion for Summary Judgment (the "Prior Order"). (Order 9:17–18, ECF No. 56).  In the Prior Order, the Court voided Defendant's April 18, 2015 election for the office of vice president and ordered that a new vice-presidential election be conducted under Plaintiff's supervision. (*Id.* 9:18–20).

Defendant filed its Motion to Amend/Correct or Alternatively to Stay Enforcement of Judgment on September 25, 2017, (ECF No. 58), and Plaintiff filed its Motion for Reconsideration on October 10, 2017, (ECF No. 59).

## II.   LEGAL STANDARD

 "[A] motion for reconsideration should not be granted, absent highly unusual circumstances." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003) (citation omitted).

Reconsideration is appropriate where: (1) the court is presented with newly discovered evidence, (2) the court committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law. *School Dist. No. 1J, Multnomah County v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). However, a motion for reconsideration is not a mechanism for rearguing issues presented in the original filings. *Backlund v. Barnhart*, 778 F.2d 1386, 1388 (9th Cir. 1985). Furthermore, although the court enjoys discretion in granting or denying a motion under this rule, "amending a judgment after its entry remains an extraordinary remedy which should be used sparingly." *Allstate Ins. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011) (internal quotation marks and citation omitted).

## III.   DISCUSSION

In Plaintiff's instant Motion, Plaintiff asks the Court to reconsider its decision to not address whether Trujillo was properly disqualified based on residency. (Pl.'s MFR 3:10–12, ECF No. 59).  Additionally, Defendant seeks in its Motion to amend the Court's judgment on its Prior Order "to reflect that Trujillo was properly disqualified [from] running for office in 2015 . . ." (Def.'s MTAJ. 2:20–21, ECF No. 58).  The Court will first address Plaintiff's Motion for Reconsideration and then will turn to Defendant's Motion to Alter or Amend Judgment or in the Alternative to Stay Enforcement of Judgment.

### A.   Plaintiff's Motion for Reconsideration

In its Motion, Plaintiff asks the Court to reconsider its decision to not address whether Trujillo was properly disqualified based on residency under Rule 60(b). (Pl.'s MFR 3:10–12, ECF No. 59).  Specifically, Plaintiff asserts that the Court incorrectly decided against addressing whether Defendant's residency requirement also violated the LMRDA. (*Id.* 7:16–18).  Plaintiff argues that if Trujillo was legitimately disqualified based on Defendant's residency requirement, then the improper disqualification based on Defendant's literacy requirement could not have affected the outcome of the election. (*Id.* 7:27–8:2).  Accordingly,

the Court could not have ordered a new supervised election. (*Id.* 7:1–3). Thus, Plaintiff argues that the Court can only order a new supervised election if Defendant's residency requirement violated the LMRDA. (*Id.* 8:6–12).

Defendant agrees to Plaintiff's reconsideration of the residency requirement. (Def.'s Resp. 7:3–4, ECF No. 63). However, Defendant argues that the evidence provided in Plaintiff's Motion for Summary Judgment does not support Plaintiff's argument that the residency requirement was not reasonably applied. (*Id.* 7:8–9; Pl.'s MSJ 13:1–2, ECF No. 31). Defendant asserts that Trujillo was disqualified because he presented a California driver's license instead of a "United States passport, resident alien card, or other document approved by the Attorney General; or . . . a combination of other documents such as a driver's license and social security card . . . ." (Def.'s Resp. 7:27–8:3) (quoting *Chamber of Commerce of the U.S. v. Whiting*, 563 U.S. 582, 589 (2011)). Further, Defendant argues that Trujillo was aware of the rule requiring him to proffer proof of residency "immediately after the close of nominations." (*Id.* 8:21–22). Thus, Defendant concludes that because Trujillo did not provide approved documentation to fulfill the residency requirement, it did not violate the LMRDA in disqualifying Trujillo. (*Id.* 8:25–9:2).

Plaintiff argued in its prior briefings that Defendant did not apply the residency requirement "in a reasonable and uniform way." (Pl.'s MSJ 13:25–26). Plaintiff further asserts that Defendant did not provide adequate notice to Trujillo as to the particular time at which he was required to furnish proof of residency. (*Id.* 13:26–27). Plaintiff contends that Vigil "created an on-the-spot requirement" that all incumbent candidates provide proof of residency at the time of their interview. (*Id.* 13:27–14:2). Moreover, in its Reply to Defendant's Cross Motion for Summary Judgment, Plaintiff argues the rule of requiring proof of residency "at the close of nominations" does not exist. (Pl.'s Reply Supp. Mot. Summ. J. 5:10, ECF No. 43).

While the Court finds neither clear error nor manifest injustice in the reasoning of its prior Order, the Court will grant Plaintiff's Motion for Reconsideration insomuch as supplementing the Prior Order by analyzing the residency requirement. The Laborers International Uniform Local Constitution ("Constitution") states that when nominations have been completed, the Judge of Election will announce the time and place when she will examine the candidates to ensure each possesses the mandatory qualifications. (De La Torre Decl., Ex. 2 to Pl.'s MSJ at 94, ECF No. 31-4).

The Court is not persuaded by Defendant's argument that Trujillo was properly disqualified because he did not conform to Article V of the Constitution, which governs literacy and residency requirements. (*See* De La Torre Decl., Ex. 2 to Pl.'s MSJ at 90–92). Although Defendant attempts to argue that the challenging candidates were required to present proof of residency "immediately after the close of nominations," (Def.'s Resp. 8:9–11, ECF No. 63), this argument distorts the words of the Constitution. The Constitution actually reads that "[a]ll of the qualifications for office must be present *at the time of nominations*. . . ." (De La Torre Decl., Ex. 2 to Pl.'s MSJ at 92) (emphasis added). Further, as stated in the Court's Prior Order, "Section 481(e) states that '[i]n any election . . . a reasonable opportunity shall be given for the nomination of candidates and every member in good standing shall be eligible to be a candidate and to hold office' subject to 'reasonable qualifications uniformly imposed.' 29 U.S.C. § 481(e)." (Prior Order 6:14–17, ECF No. 56).

Here, Defendant violates Section 481(e) because its residency requirement was not "uniformly imposed." Whereas other challengers were disqualified during the same election for failing to satisfy the work attendance requirement, (*see* Questionnaires at 3, 7, ECF No. 31-9), Trujillo was the only candidate disqualified for failing to satisfy Defendant's arbitrary application of the residency requirement. (*See id.* at 3, 5, 7).

Similarly, in *Wirtz v. National Maritime Union of America*, 399 F.2d 544, 548 (2d Cir. 1968), the Second Circuit held that a union violated Section 481(e) because it only imposed its requirement to personally secure "official nominating forms and endorsements of fellow members" on some challengers and disqualified the challengers when they did not satisfy it. Further, the Second Circuit found that the union's incongruous application of this form securing requirement "deprived its members of a reasonable opportunity to nominate and support candidates. . . ." and violated "necessary protections of the public interest as well as of the rights and interests of union members." *Id.* at 550 (quoting *Wirtz v. Hotel, Motel & Club Emps. Union*, 391 U.S. 492, 497 (1968)). Likewise, Defendant violated Section 481(e) because Vigil gave Trujillo until the end of business day to retrieve his birth certificate, but disqualified Trujillo only ten minutes later and outside of Trujillo's presence. (Stevens Decl., Ex. B to Pl.'s MSJ ¶ 10, ECF No. 31-10). Not only did Defendant fail to uniformly impose this residency requirement on all of its candidates, but Defendant also unilaterally altered the notice provided to Trujillo while he attempted to meet the residency requirement. (*Id.* at ¶¶ 9, 10). Thus, because Vigil provided Trujillo a specific timeframe to present his residency qualifications and, without notice, disqualified only Trujillo, Defendant violated Section 401(e) and in turn unfairly affected the outcome of the election.

Moreover, Article V, Section 10 ("Article V") of the Constitution is not determinative of a deadline to present a candidate's qualifications. Whereas Article V of the Constitution states all candidates should possess the required qualifications at the time they run for office, (De La Torre Decl., Ex. 2 to Pl.'s MSJ at 92), Article VI, Section 2, Subsection B ("Article VI") gives the Judge of Election authority to announce the time and place at which candidates will need to furnish proof of said qualifications. (*Id.* at 94). With the authority of Article VI, Vigil provided Trujillo three hours to retrieve proper documentation to show proof of residency. When Vigil disqualified Trujillo ten minutes into the three hours he had allotted Trujillo to retrieve proper

documentation, Vigil did not apply the residency requirement uniformly, but rather unfairly and unreasonably.

Accordingly, the Court finds that Defendant unfairly administered the residency requirement. Thus, consistent with its Prior Order, the Court holds that the 2015 election is void due to the literacy requirement, [1] and further holds that the 2015 election is void due to the residency requirement.

**B.      Defendant's Motion to Amend the Judgment**

In its Motion, Defendant requests that the Court amend its Judgment to "reflect [that] the residency/lawfully employable requirement [was] reasonable and uniformly imposed. . . ." (Def.'s MTAJ 4:2–4, ECF No. 58).[2] Pursuant to the Court's clarification above, and after reviewing Defendant's Motion, the Court denies Defendant's Motion to Alter or Amend Judgment.

## IV.      CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Reconsideration, (ECF No. 59), is **GRANTED** as to the residency requirement and **DENIED** as to the literacy requirement.

**IT IS FURTHER ORDERED** that the Court **GRANTS** summary judgment for Plaintiff as to the residency requirement.

**IT IS FURTHER ORDERED** that Defendant's April 18, 2015 election for the office of vice president remains void and that a new election be conducted for the office of vice president under Plaintiff's supervision.

///

///

---

[1] Although Plaintiff argues that the Court should hold that the literacy requirement be waived due to its unconstitutionality, the Court stands by its Prior Order and **DENIES** this request.

[2] In the alternative, Defendant requests that the Court stay the enforcement of the judgment until April 2018. (*Id.* at 8:3–4). However, because the April 2018 elections have passed, Defendant's Motion in the Alternative is **DENIED** as moot.

Case 2:15-cv-01979-GMN-CWH Document 63 Filed 09/24/18 Page 10 of 10

**IT IS FURTHER ORDERED** that Defendant's Motion to Alter or Amend Judgment or Alternatively to Stay Enforcement of Judgment, (ECF No. 58), is **DENIED**.

**DATED** this __24__ day of September, 2018.

_____

Gloria M. Navarro, Chief Judge
United States District Court

**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

MAY 18 2020

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

---

EUGENE SCALIA, Secretary of Labor, United States Department of Labor,[*]

       Plaintiff-Appellee,

  v.

LABORERS INTERNATIONAL UNION OF NORTH AMERICA LOCAL 872,

       Defendant-Appellant.

No.   18-17229

D.C. No.
2:15-cv-01979-GMN-CWH

MEMORANDUM[**]

---

Appeal from the United States District Court
for the District of Nevada
Gloria M. Navarro, District Judge, Presiding

Argued and Submitted May 6, 2020
Portland, Oregon

Before:  WATFORD and HURWITZ, Circuit Judges, and PREGERSON,[***]
District Judge.

    Officials of Laborers International Union of North America Local 872

---

[*]     Eugene Scalia is the current Secretary of Labor and was automatically substituted as a party.  Fed. R. App. P. 43(c)(2).

[**]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[***]   The Honorable Dean D. Pregerson, United States District Judge for the Central District of California, sitting by designation.

disqualified Martin Trujillo as a candidate for the Local vice-presidency in 2015, finding that he failed to establish English literacy and lawful permanent residency at the nomination meeting. The Secretary of Labor challenged Trujillo's disqualification under Title IV of the Labor-Management Reporting and Disclosure Act ("LMRDA"), which requires that a "reasonable opportunity shall be given for the nomination of candidates and every member in good standing shall be eligible to be a candidate and to hold office (subject to . . . reasonable qualifications uniformly imposed)." 29 U.S.C. § 481(e). Under the LMRDA, even facially reasonable qualifications "may not be proper if they are applied in an unreasonable manner." 29 C.F.R. § 452.53; *see Reich v. Local 89, Laborers' Int'l Union of N. Am.*, 36 F.3d 1470, 1477, 1478 (9th Cir. 1994).

The district court granted summary judgment to the Secretary, declared the 2015 vice-presidential election void, and ordered the Secretary to supervise a new election. *See* 29 U.S.C. § 482(c). We have jurisdiction over Local 872's appeal under 28 U.S.C. § 1291 and affirm.

1. The district court correctly held that Local 872 unreasonably applied its residency requirement. Although the election notice required candidates to bring one of several specific forms of documentation of legal residency to the nomination meeting, Trujillo brought only his driver's license, which was not on the list of

2

acceptable documents.[1] The election judges initially accepted the driver's license as proof of residency, but then instructed Trujillo, who indicated that he had two acceptable forms of documentation at home, to leave the meeting and return with them by the end of the day. Ten minutes after Trujillo left, however, the election judges disqualified him, although election ballots were not scheduled to be mailed for another month, guaranteeing reelection of the now-unopposed incumbent.

Trujillo was presumptively eligible for office, *see* 29 U.S.C. § 481(e), and "in the light of all the circumstances," *Chao v. Bremerton Metal Trades Council*, 294 F.3d 1114, 1121-22 (9th Cir. 2002) (quoting *Local 3489, United Steelworkers of Am. v. Usery*, 429 U.S. 305, 313 (1977)), Local 872 acted unreasonably in summarily disqualifying him for lack of documentation that he was given permission to retrieve. *See Reich v. Dist. Lodge 720, Int'l Ass'n of Machinists & Aerospace Workers*, 11 F.3d 1496, 1498 (9th Cir. 1993) ("The purpose of Title IV is to insure free and democratic union elections and offset some of the inherent advantages that

---

[1] We reject the Secretary's contention that requiring candidates to present proof of residency at the nomination meeting conflicts with the union constitution. *See Busch v. Givens*, 627 F.2d 978, 981 (9th Cir. 1980) ("Absent bad faith or other compelling circumstance, a union's interpretation of its constitution, as well as its interpretation of its own rules and procedures, should prevail over a court's notion as to how the union should conduct its affairs.").

incumbents enjoy over rank and file members.").[2]

2. Local 872 also unreasonably applied the literacy requirement. Trujillo was deemed illiterate based entirely on an election judge's assessment that his reading of passages from the union constitution was not "smooth" and "continuous," and that Trujillo seemed to have difficulty, paused, and mispronounced "some words." Under the LMRDA, a union must establish "specific standards of eligibility by which any member can determine in advance whether or not he is qualified to be a candidate." 29 C.F.R. § 452.53. The ad hoc determination that a candidate's reading of the union constitution does not pass muster fails to meet that standard.[3]

3. Upon finding a LMRDA violation that "may have affected the outcome of an election," the district court must declare the election void and "direct the conduct of a new election under supervision of the Secretary." 29 U.S.C. § 482(c). Local 872 asks us to direct the Secretary to supervise the next regularly scheduled election in 2021, rather than an interim election. Although the LMRDA

---

[2] On appeal, the Secretary does not dispute the general validity of a residency or literacy requirement, contending only that Local 872's requirements were unreasonably applied to Trujillo.

[3] The Secretary need not establish Trujillo's literacy to show that the requirement was unreasonably applied. The LMRDA was not "designed merely to protect the right of a union member to run for a particular office in a particular election," but rather to protect the "vital public interest in assuring free and democratic union elections that transcends the narrower interest of the complaining union member." *Wirtz v. Local 153, Glass Bottle Blowers Ass'n*, 389 U.S. 463, 475 (1968).

4

contemplates a prompt election, *see* 29 U.S.C. § 482(d), Local 872's next regularly scheduled election is less than a year away and Trujillo is no longer a member of the Local. Local 872 argues that it would be inequitable to require a costly interim election for one office now because the Secretary declined to supervise the intervening 2018 election and the current vice-president's term is nearly finished.

Although Local 872's arguments have some force, we decline to issue a prescriptive order to the Secretary about scheduling the supervised election. The district court simply ordered that "a new election be conducted for the office of vice president under [the Secretary's] supervision," without specifying a particular date. The LMRDA does not prohibit the Secretary from agreeing to supervise Local 872's next regularly scheduled election. *See* 29 U.S.C. § 482(b), (c). We therefore affirm the orders of the district court. If the parties are unable to arrive at a mutually agreeable time for the Secretary to supervise a vice-presidential election, they are free to return to the district court to resolve that dispute in the first instance.[4]

   **AFFIRMED.**[5]

---

[4]   At oral argument, counsel for the Secretary indicated that the Department's "general position" is to coordinate with unions in scheduling supervised elections, and that, in light of the ongoing global pandemic, the Secretary was open to coordinating with Local 872 to schedule the supervised vice-presidential election.

[5]   Local 872's motion for judicial notice, **Dkt. 18,** is denied.