CHRISTOPHER CHIOU
Acting United States Attorney
District of Nevada
Nevada Bar No. 14853
TROY K. FLAKE
Assistant United States Attorney
501 Las Vegas Boulevard, South, Suite 1100
Las Vegas, Nevada 89101
702-388-6336
Troy.Flake@usdoj.gov

*Attorneys for the United States*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| MARTIN J. WALSH,<br>Secretary of Labor,<br>United States Department of Labor,<br><br>       Plaintiff,<br><br>  v.<br><br>LOCAL 872, LABORERS<br>INTERNATIONAL UNION OF NORTH<br>AMERICA,<br><br>       Defendant. | Case No. 2:15-cv-01979-GMN-CWH<br><br>**Motion For Order Declaring Election Results and Entering Final Judgment** |

Plaintiff Martin J. Walsh, Secretary of the United States Department of Labor ("DOL"), requests this Court enter the proposed Order Declaring Election Results and Entering Final Judgment.

## I.    Introduction

DOL brought this complaint against Local 872 of the Laborers International Union of North America ("Local 872") alleging that irregularities in Local 872's 2014 election rendered the results for the office of Vice-President invalid. The parties resolved this matter by stipulating that the DOL supervise Local 872's 2021 election. After supervising the election, DOL filed its Certification of Election with this Court on July 26, 2021. DOL now requests the Court to enter an Order Declaring Election Results and Entering Final Judgment.

## II.    Background

The facts giving rise to this union election dispute have been extensively set out in prior pleadings. See, e.g. ECF No. 31. On July 24, 2020, the parties executed a Stipulation of Settlement agreeing to allow DOL to supervise Local 872's May 2021 triennial election. Exhibit B Stipulation of Settlement, ECF No. 82.  This settlement agreement is consistent with this Court's Orders dated August 25, 2017, and September 24, 2018, and the decision of the Ninth Circuit, dated May 18, 2020 (Exhibit A – ECF No. 85-2).

Plaintiff supervised Local 872's election of officers held on April 17, 2021. In the 2021 supervised election, Local 872 filled the offices of President/Convention Delegate, Vice President, Recording Secretary, Business Manager-District Council Delegate-Convention Delegate-Secretary Treasurer, Sergeant-at-Arms, three Auditors, four District Council Delegates, and three Executive Board Members.  The newly elected officers were installed on May 3, 2021.

## III.   Discussion

Section 402(c) of the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA), 29 U.S.C. § 482(c), provides, in relevant part, that:

> … the court shall declare the election, if any, to be void and direct the conduct of a new election under the supervision of the Secretary and, so far as lawful and practicable, in conformity with the constitution and bylaws of the labor organization.  The Secretary shall promptly certify to the court the names of the persons elected, and the court shall thereupon enter a decree declaring such persons to be the officers of the labor organization.

After supervising the 2021 election of Local 872's officers, DOL filed its Certification of Election with this Court on July 26, 2021 (Exhibit C). Attached to Exhibit C is a declaration setting forth the details of the supervised election, including one pre-election protest that was resolved before DOL filed its Certification of Election. DOL dismissed the allegations and determined that the supervised election complied with Title IV of the LMRDA, 29 U.S.C. §§ 481-483.

DOL and Local 872 have now met all the conditions required to resolve this matter. Accordingly, in compliance with Section 402(c) of the LMRDA, 29 U.S.C. § 482(c), DOL respectfully requests that this Court issue an Order Declaring Election Results and Entering Final Judgment and to dismiss this case.

## IV.   Conclusion

DOL supervised Local 872's 2021 election and the parties have complied with all conditions required under the LMRDA. Accordingly, the Court should grant this motion and enter the proposed order.

Respectfully submitted this 3rd day of November 2021.

CHRISTOPHER CHIOU
Acting United States Attorney


*/s/ Troy K. Flake*
TROY K. FLAKE
Assistant United States Attorney


## Certificate of Service

I hereby certify that on November 3, 2021, I electronically filed the foregoing **Motion for Declaration of Election Results and Entering Final Judgment** with the Clerk of the Court for the United States District Court for the District of Nevada using the CM/ECF system.

CHRISTOPHER CHIOU
Acting United States Attorney
District of Nevada
Nevada Bar No. 14853
TROY K. FLAKE
Assistant United States Attorney
501 Las Vegas Boulevard, South, Suite 1100
Las Vegas, Nevada 89101
702-388-6336
Troy.Flake@usdoj.gov

*Attorneys for the United States*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| MARTIN J. WALSH,<br>Secretary of Labor,<br>United States Department of Labor,<br><br>Plaintiff,<br><br>v.<br><br>LOCAL 872, LABORERS<br>INTERNATIONAL UNION OF NORTH<br>AMERICA,<br><br>Defendant. | Case No. 2:15-cv-01979-GMN-CWH<br><br>**Proposed Order Declaring Election Results and Entering Final Judgment** |

AND NOW, this 3rd day of November, 2021, upon consideration of the Motion for Declaration of Election Results and Entering Final Judgment, filed by plaintiff Martin J. Walsh, Secretary of the United States Department of Labor, and any responses thereto,

1.  It is HEREBY DECLARED, pursuant to 29 U.S.C. § 482(c), that the following persons are officers of defendant Local 872, Laborers International Union of North America, as indicated:

|  |  |
|---|---|
| Louis De Salvio | President |
| Marco Hernandez | Vice President |
| Chelsy Torres | Recording Secretary |
| Thomas White | Business Manager/Secretary-Treasurer Delegate |
| Henry Baker | Sergeant-at-Arms |
| Dennis Cronin | Auditor |
| Eddie Ramirez | Auditor |
| David Pruitt | Auditor |
| Rogelio Gonzalez | Executive Board Member |

4

Archie Walden             Executive Board Member
Mike DaSilva             Executive Board Member
Louis De Salvio        District Council Delegate
Dennis Cronin               District Council Delegate
Rogelio Gonzalez     District Council Delegate
Marco Hernandez     District Council Delegate

2. It is HEREBY ORDERED that this matter is dismissed.

Dated: _____April 1, 2022_____

_____

Gloria M. Navarro, Chief Judge
United States District Court

**Index of Exhibits**

- **Exhibit A** – This Court's August 25, 2017 (ECF No. 56) and September 24, 2018 (ECF No. 69) Order Ninth Circuit May 18, 2020, Decision (ECF No. 79). All contained in ECF No. 85-2

- **Exhibit B** – Stipulation of Settlement (ECF No. 82 )

- **Exhibit C** – Certification of Election (ECF No. 85)

# EXHIBIT A

This Court's August 25, 2017 (ECF No. 56)
and September 24, 2018 (ECF No. 69)
Order Ninth Circuit May 18, 2020, Decision
(ECF No. 79).
All contained in ECF No. 85-2

# EXHIBIT 1

Court Orders dated August 25, 2017 (ECF No. 56), September 24, 2018 (ECF No. 69) and Ninth Circuit Court of Appeals Decision (ECF No. 79) dated May 18, 2020

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

R. ALEXANDER ACOSTA, Secretary of
Labor, United States Department of Labor,

                Plaintiff,

    vs.

LOCAL 872, LABORERS
INTERNATIONAL UNION OF NORTH
AMERICA,

                Defendant.

Case No.: 2:15-cv-1979-GMN-CWH

**ORDER**

Pending before the Court is the Motion for Summary Judgment, (ECF No. 31), filed by Plaintiff R. Alexander Acosta, Secretary of Labor of the United States Department of Labor ("Plaintiff"). Defendant Local 872, Laborers International Union of North America ("Defendant") filed a Response, (ECF No. 35), and Plaintiff filed a Reply, (ECF No. 43).

Also pending before the Court is the Cross Motion for Summary Judgment, (ECF No. 40), filed by Defendant. Plaintiff filed a Response, (ECF No. 44), and Defendant filed a Reply, (ECF No. 45). For the reasons discussed below, the Court **GRANTS** Plaintiff's Motion for Summary Judgment and **DENIES** Defendant's Cross Motion for Summary Judgment.

## I.   BACKGROUND

This case arises out of Defendant's 2015 election for union officers. Defendant is a labor organization recognized by the Labor-Management Reporting and Disclosure Act of 1959, as amended, 29 U.S.C. § 401, *et seq.* (the "LMRDA"). Defendant is located in Nevada and Arizona, and seventy percent of the members are Hispanic, with approximately thirty-five percent speaking only Spanish. (De La Torre Decl., Ex. A to Pl.'s Mot. for Summ. J. ("MSJ") at 3, ECF No. 31-3); (Stevens Decl., Ex. B to Pl.'s MSJ ¶ 2, ECF No. 31-10).

Customarily, union members who seek to hold office must meet qualifications listed in Article V of the Laborers International Uniform Local Constitution (the "Constitution"), which includes literacy and residency. (*See* De La Torre Decl., Ex. A to Pl.'s MSJ at 90-92, ECF No. 31-4). Regarding literacy, the Constitution only requires that a candidate "[s]hall be literate." (*Id.* at 90). A resource for interpreting the Constitution titled "The Local Union Officer Elections: A Guide for Local Union Judges of Election, February 2013" (the "Election Guide"), (ECF Nos. 31-5, 31-6), provides an example question testing literacy in a sample candidate questionnaire. The sample questionnaire simply asks if the nominee can "read and write basic English." (Election Guide at 36, ECF No. 31-6). Beyond this guidance, Defendant lacks standardized criteria for testing literacy. (*See* De La Torre Decl., Ex. A to Pl.'s MSJ at 6, ECF No. 31-8).

Concerning residency, the Constitution requires that a candidate "[s]hall be a lawful permanent resident and shall be lawfully employable under the laws of the United States and Canada." (*See* De La Torre Decl., Ex. A to Pl.'s MSJ at 90, ECF No. 31-4). The Election Guide further specifies:

> In order to run for office, a member must: (c) be a lawful permanent resident and shall be lawfully employable under the laws of the United States and Canada; this qualification may be established by presenting one of the following: 1) Birth Certificate . . . ; 2) U.S. Passport . . . ; 3) Alien Registration Receipt Card with photograph (green card); 4) A Certificate of Naturalization; or, 5) such other documentation as the Judges may deem appropriate.

(Election Guide at 21, ECF No. 31-5).

On April 18, 2015, Defendant held elections for the positions of president, vice president, and secretary-treasurer/business manager ("secretary"). (De La Torre Decl., Ex. A to Pl.'s MSJ at 93, ECF No. 31-4). The candidates competing for the positions were either incumbents or challengers; the challengers included Martin Trujillo ("Trujillo") for vice president, John Stevens ("Stevens") for secretary, and Marco Reveles ("Reveles") for recording

secretary (collectively "challenging candidates"). (Stevens Decl., Ex. B to Pl.'s MSJ ¶ 6). Before the election, Defendant contacted candidates pursuant to a notice stating that candidates would be required to provide a birth certificate, a passport, an alien registration card, or "[a]ny other document that establishes lawful permanent residency that is recognized by the Immigration and Naturalization Service." (*See* De La Torre Decl., Ex. A to Pl.'s MSJ at 1, ECF No. 31-7). Additionally, all candidates were required to fill out a questionnaire. (*See generally* De La Torre Decl., Ex. A to Pl.'s MSJ, ECF No. 31-9 ("Questionnaires")). Defendant required candidates to then meet with election judges, including appointed election judge Robert Vigil ("Vigil"), so that the judges could measure the candidates' qualifications. (*See* De La Torre Decl., Ex. A to Pl.'s MSJ at 94, ECF No. 31-4).

In his questionnaire, Trujillo answered "yes" to whether he was able to read and write basic English. (Questionnaires at 4). Vigil believed that Trujillo was not fluent in English and, at the judges' meeting, administered his own literacy test by asking Trujillo to read a provision of the Constitution out loud and interpret it. (*See generally* De La Torre Decl., Ex. A to Pl.'s MSJ, ECF No. 31-8 ("Vigil Interview")). After Trujillo had difficulty with this task, Vigil indicated to the other judges that Trujillo did not meet the literacy requirement. (*Id.*). Another judge asked Vigil to allow Trujillo another chance, and after Trujillo had difficulty again, Vigil maintained that Trujillo did not meet the requirements. (*Id.*). No other candidate was asked to demonstrate literacy. (Stevens Decl. ¶ 7).

Subsequently, Vigil asked all three challenging candidates for their identification. (Stevens Decl. ¶ 8). Each challenging candidate presented his driver's license, which the judges accepted as adequate. (*Id.*). Suddenly, Vigil stated that the driver's licenses were no longer adequate and directed only Trujillo and Reveles to retrieve their birth certificates from home as additional identification. (*Id.* ¶ 9). Vigil provided them a three-hour timeframe to retrieve the birth certificates. (*Id.*).

Ten minutes after Trujillo left, Vigil declared Trujillo disqualified. (*Id.* ¶ 10). Reveles was then disqualified for failing to present proof of residency, and both Stevens and Reveles were disqualified for failing to meet a work and attendance requirement. (*See* De La Torre Decl., Ex. A to Pl.'s MSJ, ECF No. 31-9). Because all three challenging candidates were disqualified, the incumbent candidates won the elections. (*See* De La Torre Decl., Ex. A to Pl.'s MSJ, ECF No. 31-8).

In the instant Motion, Plaintiff seeks summary judgment for Defendant's violation of the LMRDA. (Pl.'s MSJ 2:9-10). Moreover, if the Court grants summary judgment in favor of Plaintiff, Plaintiff asks the Court to declare void the April 18, 2015 election and order a new election to be conducted under Plaintiff's supervision. (*Id.* 2:10-14).

## II.   **LEGAL STANDARD**

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come

forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.

The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III.   **DISCUSSION**

Plaintiff seeks summary judgment on the single allegation of a violation of section 401(e) of the LMRDA. (*See generally* Compl., ECF No. 1). Specifically, Plaintiff seeks summary judgment because Defendant "violated [the LMRDA] when it disqualified Trujillo by unreasonably applying literacy and proof-of-residency requirements." (Pl.'s MSJ 10:14–16). Conversely, Defendant alleges in its Motion for Summary Judgment that Plaintiff cannot show a violation of the LMRDA because "there was no violation . . . when Trujillo was disqualified for failing to present proof that he met the permanent resident/lawfully employable requirement." (Def.'s MSJ 12:9–11). Because Defendant's Motion is the direct converse of Plaintiff's Motion, a resolution of the claim resolves both Motions.

Section 481(e) states that "[i]n any election required by this section which is to be held by secret ballot a reasonable opportunity shall be given for the nomination of candidates and every member in good standing shall be eligible to be a candidate and to hold office" subject to "reasonable qualifications uniformly imposed." 29 U.S.C. § 481(e). Reasonable qualifications "must be considered in light of the democratic aim of the statute" and "the Supreme Court has made clear that qualifications are to be gauged 'in the light of all the circumstances of the particular case.'" *Chao v. Bremerton Metal Trades Council, AFL-CIO*, 294 F.3d 1114, 1122 (9th Cir. 2002) (quoting *Local 3489, United Steelworkers v. Usery*, 429 U.S. 305, 313, 97 S. Ct. 611 (1977)).

Congress intended the purpose of the LMRDA to "protect the rights of rank-and-file members to participate fully in the operations of their union," *Wirtz v. Hotel, Motel & Club Employees Union, Local 6*, 391 U.S. 492, 497 (1968), and "to provide a fair election and

guarantee membership participation," *Amer. Fed. of Musicians v. Wittstein*, 379 U.S. 171, 182 (1964). Moreover, "Congress plainly did not intend that the authorization in [section 481(e)] of 'reasonable qualifications uniformly imposed' should be given broad reach." *Wirtz*, 391 U.S. at 499. The Supreme Court holds that "reasonable qualification" should be narrowly construed because "[u]nduly restrictive candidacy qualifications can result in the abuses of entrenched leadership that the LMRDA was expressly enacted to curb." *Local 6*, 391 U.S. at 499; *see* 29 C.F.R. § 452.36.

The LMRDA includes an enforcement scheme that permits courts to void union elections that are in violation. 28 U.S.C. § 482. Once a union member has exhausted internal union remedies, and the Secretary of Labor investigates the complaint, then the Secretary may sue in federal court for an order annulling the challenged election and requiring a new election under the Secretary's supervision. *Id.* at § 482(b). The Secretary must prove by a preponderance of the evidence that a violation occurred and that the violation may have affected the outcome of the election. *Reich v. Local 89, Laborers' Int'l Union of N. Am., AFL-CIO*, 36 F.3d 1470, 1474 (9th Cir. 1994). The instant action is at the third step in this process.

In order to determine whether a violation occurred, the Court must examine whether the qualification at issue is reasonable in light of the purpose of the LMRDA to ensure fair and democratic practices in unions. *Local 3489, United Steelworkers of Amer. v. Usery*, 429 U.S. 305, 309 (1977); *see also Local 6*, 391 U.S. at 497-498; *Wirtz v. Local 153, Glass Bottle Blowers Assn.*, 389 U.S. 463, 468-70. In assessing eligibility restrictions, the regulations promulgated by the Secretary of Labor provide the following for evaluating reasonableness:

> [R]estrictions on the right of members to be candidates must be closely scrutinized to determine whether they serve union purposes of such importance to justify subordinating the right of the individual member to seek office and the interest of the membership in free, democratic choice of leaders.

29 C.F.R. § 452.35.[1]  Moreover, the Ninth Circuit has found LMRDA violations where unions unreasonably apply a facially neutral requirement. *Local 89*, 36 F.3d at 1474, 1478 ("While a particular procedure may not on its face violate the requirements of the LMRDA, its application in a given instance may make nominations so difficult as to deny members a reasonable opportunity to nominate.").

Here, two of Defendant's requirements are at issue in potentially invalidating the election: the literacy requirement and the residency requirement.  The Court begins with the literacy requirement.

### A. Literacy Requirement

Plaintiff states that Defendant violated the LMRDA "because the literacy test it conducted was not applied uniformly." (Pl.'s MSJ 12:10–11).  Specifically, "Trujillo was the only candidate [ ] Vigil subjected to a literacy test" and Vigil had "no specific or objective criteria for determining when a candidate would be forced to prove literacy to [Vigil's] satisfaction." (*Id.* 12:11–13); (*see* Decl. of Robert Vigil ¶¶ 8–17, ECF No. 36).  Moreover, Plaintiff states that Vigil implemented this test without giving Trujillo notice. (Pl.'s MSJ 12:19).

The enforcement regulations of the LMRDA state that "[q]ualifications must be specific and objective.  They must contain specific standards of eligibility by which any member can determine in advance whether or not he is qualified to be a candidate." 29 C.F.R. § 452.53.

Here, Defendant essentially concedes that the literacy test implemented to only Trujillo was unreasonable.  Specifically, Defendant states "[s]ection 481(e) requires that the literacy *qualification* be reasonable; it does not require that the *test* used to determine literacy be

---

[1] The Ninth Circuit in *Chao v. Bremerton Metal Trades Council, AFL-CIO*, 294 F.3d 1114, 1122 (9th Cir. 2002), held that this regulation is applicable to elections governed by § 481(e) of the LMRDA.  Additionally, "although this regulation interpreting reasonableness is not binding on [the court], [the Ninth Circuit is] persuaded it is useful in applying § 481(e)." *Chao*, 294 F.3d at 1122 n.5.

Page 8 of 10

reasonable." (Resp. 15:14–16) (emphasis in original).  In asserting this, Defendant is seemingly arguing that because the Constitution is reasonable in requiring a literacy qualification, the vehicle used to enforce the qualification need not be reasonable.  This argument is unpersuasive and directly contradicts the LMRDA goals of uniformity and access.  *See* 29 C.F.R. § 452.53.  Notably, Vigil himself admits that he only applied the literacy test to Trujillo, claiming that he was aware the other candidates were literate from knowing them personally.  This rationale highlights the lack of objective measure applied to the literacy requirement.  Because Defendant effectively does not contest that the literacy test was unreasonable, therefore precluding the issue from being a genuine issue of material fact, the Court grants summary judgment in favor of Plaintiff.

Section 482 states that if a court finds "upon a preponderance of the evidence" that a "violation of section 481 . . . may have affected the outcome of an election, the court shall declare the election, if any, to be void and direct the conduct of a new election under supervision of the Secretary." 29 U.S.C. § 482(c).  Because the Court finds that Defendant violated § 481 in implementing this unreasonable literacy requirement, there is no need for the Court to discuss the alleged infractions arising from the residency requirement.

Accordingly, the Court grants Plaintiff's Motion for Summary Judgment pursuant to Defendant's unreasonable literacy requirement.  The Court declares the April 18, 2015 election for the office of vice president void and the Court directs that a new election be conducted for the office of vice president under the Plaintiff's supervision as dictated by 29 U.S.C. § 482(c).[2]

_____

[2] Notably, Defendant does not address the literacy requirement argument in its Motion for Summary Judgment, stating in a footnote that "[i]t is [Defendant's] position that if Trujillo was properly disqualified because of his failure to meet the permanent resident/lawfully employable requirement, there was no violation of the LMRDA." (Def.'s MSJ 6:26–28, ECF No. 40).  The Court is not persuaded by this argument as the two infractions are independent of each other.  All the Court needs to find is Defendant's unreasonableness under § 481 in one aspect of the election in order to invalidate it pursuant to § 482.  Because the Court finds Defendant acted unreasonably in implementing its literacy requirement on only Trujillo, the election may still be invalidated. As such, due to the Court finding in favor of Plaintiff's Motion for Summary Judgment, Defendant's Cross Motion for Summary Judgment is **DENIED**.

## IV.   <u>CONCLUSION</u>

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment, (ECF No. 35), is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's Cross Motion for Summary Judgment, (ECF No. 40), is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's April 18, 2015 election for the office of vice president is void and that a new election be conducted for the office of vice president under Plaintiff's supervision.

The Clerk of the Court shall enter judgment accordingly.

**DATED** this __25__ day of August, 2017.

_____
Gloria M. Navarro, Chief Judge
United States District Judge

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

|  |  |  |
|---|---|---|
| R. ALEXANDER ACOSTA, Secretary of Labor, United States Department of Labor, | ) ) ) | |
| Plaintiff, | ) ) | Case No.: 2:15-cv-01979-GMN-CWH |
| vs. | ) ) | **ORDER** |
| LOCAL 872, LABORERS INTERNATIONAL UNION OF NORTH AMERICA, | ) ) ) ) | |
| Defendants. | ) ) ) | |

Pending before the Court is Plaintiff R. Alexander Acosta, Secretary of Labor for the United States Department of Labor's ("Plaintiff's") Motion for Reconsideration and Opposition to Defendant's Motion to Alter or Amend Judgment or Alternatively to Stay Enforcement of Judgment ("Plaintiff's MFR"), (ECF No. 59). Defendant Local 872, Laborers International Union of North America ("Defendant") filed a Response, (ECF No. 63), and Plaintiff filed a Reply, (ECF No. 66).

Also pending before the Court is Defendant's Motion to Alter or Amend Judgment or Alternatively to Stay Enforcement of Judgment ("Defendant's MTAJ"), (ECF No. 58). Plaintiff filed a Response, (ECF No. 60), and Defendant failed to file a Reply. For the reasons discussed below, the Court **GRANTS in part** and **DENIES in part** Plaintiff's Motion for Reconsideration so as to clarify and supplement the Court's prior order and **DENIES** Defendant's Motion to Alter or Amend Judgment or Alternatively to Stay Enforcement of Judgment.

I.  **BACKGROUND**

This case arises out of Defendant's 2015 election for union officers.  Defendant is a labor organization recognized by the Labor-Management Reporting and Disclosure Act of 1959, as amended, 29 U.S.C. § 401, *et seq.* (the "LMRDA").  Defendant is located in Nevada and Arizona, and seventy percent of the members are Hispanic, with approximately thirty-five percent speaking only Spanish. (De La Torre Decl., Ex. A to Pl.'s Mot. for Summ. J. ("MSJ") at 3, ECF No. 31-3); (Stevens Decl., Ex. B to Pl.'s MSJ ¶ 2, ECF No. 31-10).

Customarily, union members who seek to hold office must meet qualifications listed in Article V of the Laborers' International Uniform Local Constitution (the "Constitution"), which include literacy and residency. (*See* De La Torre Decl., Ex. 2 to Pl.'s MSJ at 90–92, ECF No. 31-4).  Regarding literacy, the Constitution only requires that a candidate "[s]hall be literate." (*Id.* at 90).  A resource for interpreting the Constitution titled "The Local Union Officer Elections: A Guide for Local Union Judges of Election, February 2013" (the "Election Guide"), (ECF Nos. 31-5, 31-6), provides an example question testing literacy in a sample candidate questionnaire.  The sample questionnaire simply asks if the nominee can "read and write basic English." (Election Guide at 36, ECF No. 31-6).  Beyond this guidance, Defendant lacks standardized criteria for testing literacy. (*See* De La Torre Decl., Ex. 5 to Pl.'s MSJ at 6, ECF No. 31-8).  Concerning residency, the Constitution requires that a candidate "[s]hall be a lawful permanent resident and shall be lawfully employable under the laws of the United States and Canada." (*See* De La Torre Decl., Ex. 2 to Pl.'s MSJ at 90, ECF No. 31-4).  The Election Guide further specifies:

> In order to run for office, a member must: (c) be a lawful permanent resident and shall be lawfully employable under the laws of the United States and Canada; this qualification may be established by presenting one of the following: 1) Birth Certificate . . . ; 2) U.S. Passport . . . ; 3) Alien Registration Receipt Card with photograph (green card); 4) A Certificate of Naturalization; or, 5) such other documentation as the Judges may deem appropriate.

Page 2 of 10

(Election Guide at 21, ECF No. 31-5).

On April 18, 2015, Defendant held elections for the positions of president, vice president, and secretary-treasurer/business manager ("secretary"). (De La Torre Decl., Ex. 2 to Pl.'s MSJ at 93, ECF No. 31-4). The candidates competing for the positions were either incumbents or challengers; the challengers included Martin Trujillo ("Trujillo") for vice president, John Stevens ("Stevens") for secretary, and Marco Reveles ("Reveles") for recording secretary (collectively "challenging candidates"). (Stevens Decl., Ex. B to Pl.'s MSJ ¶ 6). Before the election, Defendant contacted candidates pursuant to the Constitution's notice requirement stating that candidates would be required to provide a birth certificate, a passport, an alien registration card, or "[a]ny other document that establishes lawful permanent residency that is recognized by the Immigration and Naturalization Service." (*See* De La Torre Decl., Ex. 4 to Pl.'s MSJ at 1, ECF No. 31-7). Additionally, all candidates were required to fill out a questionnaire. (*See generally* De La Torre Decl., Ex. 6 to Pl.'s MSJ, ECF No. 31-9 ("Questionnaires")). Defendant required candidates to then meet with election judges, including appointed election judge Robert Vigil ("Vigil"), so that the judges could measure the candidates' qualifications. (*See* De La Torre Decl., Ex. 2 to Pl.'s MSJ at 94, ECF No. 31-4).

In his questionnaire, Trujillo answered "yes" to whether he was able to read and write basic English. (Questionnaires at 4). Vigil believed that Trujillo was not fluent in English and, at the judges' meeting, administered his own literacy test by asking Trujillo to read a provision of the Constitution out loud and interpret it. (*See* generally De La Torre Decl., Ex. 5 to Pl.'s MSJ, ECF No. 31-8 ("Vigil Interview")). After Trujillo had difficulty with this task, Vigil indicated to the other judges that Trujillo did not meet the literacy requirement. (*Id.*). Another judge asked Vigil to allow Trujillo another chance, and after Trujillo had difficulty again, Vigil maintained that Trujillo did not meet the requirements. (*Id.*). No other candidate was asked to demonstrate literacy. (Stevens Decl. ¶ 7).

Subsequently, Vigil asked all three challenging candidates for their identification. (Stevens Decl. ¶ 8). Each challenging candidate presented his driver's license, which the judges accepted as adequate. (*Id.*). Suddenly, Vigil stated that the driver's licenses were no longer adequate and directed only Trujillo and Reveles to retrieve their birth certificates from home as additional identification. (*Id.* ¶ 9). Vigil provided them a three-hour timeframe to retrieve the birth certificates. (*Id.*).

Ten minutes after Trujillo left, Vigil declared Trujillo disqualified. (*Id.* ¶ 10). Reveles was then disqualified for failing to present proof of residency, and both Stevens and Reveles were disqualified for failing to meet a work and attendance requirement. (*See* Questionnaires). Because all three challenging candidates were disqualified, the incumbent candidates won the elections. (*See* De La Torre Decl., Ex. 5 to Pl.'s MSJ, ECF No. 31-8).

On February 6, 2017, Plaintiff filed a Motion for Summary Judgment for Defendant's violation of the LMRDA. (Pl.'s MSJ, ECF No. 31). On March 10, 2017, Defendant filed a Cross Motion for Summary Judgment arguing Plaintiff could not show that it violated the LMRDA. (Def.'s MSJ, ECF No. 40). On August 25, 2017, the Court granted Plaintiff's Motion for Summary Judgment and denied Defendant's Cross Motion for Summary Judgment (the "Prior Order"). (Order 9:17–18, ECF No. 56). In the Prior Order, the Court voided Defendant's April 18, 2015 election for the office of vice president and ordered that a new vice-presidential election be conducted under Plaintiff's supervision. (*Id.* 9:18–20).

Defendant filed its Motion to Amend/Correct or Alternatively to Stay Enforcement of Judgment on September 25, 2017, (ECF No. 58), and Plaintiff filed its Motion for Reconsideration on October 10, 2017, (ECF No. 59).

## II.   LEGAL STANDARD

"[A] motion for reconsideration should not be granted, absent highly unusual circumstances." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003) (citation omitted).

Reconsideration is appropriate where: (1) the court is presented with newly discovered evidence, (2) the court committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law. *School Dist. No. 1J, Multnomah County v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). However, a motion for reconsideration is not a mechanism for rearguing issues presented in the original filings. *Backlund v. Barnhart*, 778 F.2d 1386, 1388 (9th Cir. 1985). Furthermore, although the court enjoys discretion in granting or denying a motion under this rule, "amending a judgment after its entry remains an extraordinary remedy which should be used sparingly." *Allstate Ins. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011) (internal quotation marks and citation omitted).

## III.   DISCUSSION

In Plaintiff's instant Motion, Plaintiff asks the Court to reconsider its decision to not address whether Trujillo was properly disqualified based on residency. (Pl.'s MFR 3:10–12, ECF No. 59).  Additionally, Defendant seeks in its Motion to amend the Court's judgment on its Prior Order "to reflect that Trujillo was properly disqualified [from] running for office in 2015 . . ." (Def.'s MTAJ. 2:20–21, ECF No. 58).  The Court will first address Plaintiff's Motion for Reconsideration and then will turn to Defendant's Motion to Alter or Amend Judgment or in the Alternative to Stay Enforcement of Judgment.

### A.   Plaintiff's Motion for Reconsideration

In its Motion, Plaintiff asks the Court to reconsider its decision to not address whether Trujillo was properly disqualified based on residency under Rule 60(b). (Pl.'s MFR 3:10–12, ECF No. 59).  Specifically, Plaintiff asserts that the Court incorrectly decided against addressing whether Defendant's residency requirement also violated the LMRDA. (*Id.* 7:16–18).  Plaintiff argues that if Trujillo was legitimately disqualified based on Defendant's residency requirement, then the improper disqualification based on Defendant's literacy requirement could not have affected the outcome of the election. (*Id.* 7:27–8:2).  Accordingly,

the Court could not have ordered a new supervised election. (*Id.* 7:1–3).  Thus, Plaintiff argues that the Court can only order a new supervised election if Defendant's residency requirement violated the LMRDA. (*Id.* 8:6–12).

Defendant agrees to Plaintiff's reconsideration of the residency requirement. (Def.'s Resp. 7:3–4, ECF No. 63).  However, Defendant argues that the evidence provided in Plaintiff's Motion for Summary Judgment does not support Plaintiff's argument that the residency requirement was not reasonably applied. (*Id.* 7:8–9; Pl.'s MSJ 13:1–2, ECF No. 31).  Defendant asserts that Trujillo was disqualified because he presented a California driver's license instead of a "United States passport, resident alien card, or other document approved by the Attorney General; or . . . a combination of other documents such as a driver's license and social security card . . . ." (Def.'s Resp. 7:27–8:3) (quoting *Chamber of Commerce of the U.S. v. Whiting*, 563 U.S. 582, 589 (2011)).  Further, Defendant argues that Trujillo was aware of the rule requiring him to proffer proof of residency "immediately after the close of nominations." (*Id.* 8:21–22).  Thus, Defendant concludes that because Trujillo did not provide approved documentation to fulfill the residency requirement, it did not violate the LMRDA in disqualifying Trujillo. (*Id.* 8:25–9:2).

Plaintiff argued in its prior briefings that Defendant did not apply the residency requirement "in a reasonable and uniform way." (Pl.'s MSJ 13:25–26).  Plaintiff further asserts that Defendant did not provide adequate notice to Trujillo as to the particular time at which he was required to furnish proof of residency. (*Id.* 13:26–27).  Plaintiff contends that Vigil "created an on-the-spot requirement" that all incumbent candidates provide proof of residency at the time of their interview. (*Id.* 13:27–14:2).  Moreover, in its Reply to Defendant's Cross Motion for Summary Judgment, Plaintiff argues the rule of requiring proof of residency "at the close of nominations" does not exist. (Pl.'s Reply Supp. Mot. Summ. J. 5:10, ECF No. 43).

While the Court finds neither clear error nor manifest injustice in the reasoning of its prior Order, the Court will grant Plaintiff's Motion for Reconsideration insomuch as supplementing the Prior Order by analyzing the residency requirement. The Laborers International Uniform Local Constitution ("Constitution") states that when nominations have been completed, the Judge of Election will announce the time and place when she will examine the candidates to ensure each possesses the mandatory qualifications. (De La Torre Decl., Ex. 2 to Pl.'s MSJ at 94, ECF No. 31-4).

The Court is not persuaded by Defendant's argument that Trujillo was properly disqualified because he did not conform to Article V of the Constitution, which governs literacy and residency requirements. (*See* De La Torre Decl., Ex. 2 to Pl.'s MSJ at 90–92). Although Defendant attempts to argue that the challenging candidates were required to present proof of residency "immediately after the close of nominations," (Def.'s Resp. 8:9–11, ECF No. 63), this argument distorts the words of the Constitution. The Constitution actually reads that "[a]ll of the qualifications for office must be present *at the time of nominations*. . . ." (De La Torre Decl., Ex. 2 to Pl.'s MSJ at 92) (emphasis added). Further, as stated in the Court's Prior Order, "Section 481(e) states that '[i]n any election . . . a reasonable opportunity shall be given for the nomination of candidates and every member in good standing shall be eligible to be a candidate and to hold office' subject to 'reasonable qualifications uniformly imposed.' 29 U.S.C. § 481(e)." (Prior Order 6:14–17, ECF No. 56).

Here, Defendant violates Section 481(e) because its residency requirement was not "uniformly imposed." Whereas other challengers were disqualified during the same election for failing to satisfy the work attendance requirement, (*see* Questionnaires at 3, 7, ECF No. 31-9), Trujillo was the only candidate disqualified for failing to satisfy Defendant's arbitrary application of the residency requirement. (*See id.* at 3, 5, 7).

Similarly, in *Wirtz v. National Maritime Union of America*, 399 F.2d 544, 548 (2d Cir. 1968), the Second Circuit held that a union violated Section 481(e) because it only imposed its requirement to personally secure "official nominating forms and endorsements of fellow members" on some challengers and disqualified the challengers when they did not satisfy it. Further, the Second Circuit found that the union's incongruous application of this form securing requirement "deprived its members of a reasonable opportunity to nominate and support candidates. . . ." and violated "necessary protections of the public interest as well as of the rights and interests of union members." *Id.* at 550 (quoting *Wirtz v. Hotel, Motel & Club Emps. Union*, 391 U.S. 492, 497 (1968)). Likewise, Defendant violated Section 481(e) because Vigil gave Trujillo until the end of business day to retrieve his birth certificate, but disqualified Trujillo only ten minutes later and outside of Trujillo's presence. (Stevens Decl., Ex. B to Pl.'s MSJ ¶ 10, ECF No. 31-10). Not only did Defendant fail to uniformly impose this residency requirement on all of its candidates, but Defendant also unilaterally altered the notice provided to Trujillo while he attempted to meet the residency requirement. (*Id.* at ¶¶ 9, 10). Thus, because Vigil provided Trujillo a specific timeframe to present his residency qualifications and, without notice, disqualified only Trujillo, Defendant violated Section 401(e) and in turn unfairly affected the outcome of the election.

Moreover, Article V, Section 10 ("Article V") of the Constitution is not determinative of a deadline to present a candidate's qualifications. Whereas Article V of the Constitution states all candidates should possess the required qualifications at the time they run for office, (De La Torre Decl., Ex. 2 to Pl.'s MSJ at 92), Article VI, Section 2, Subsection B ("Article VI") gives the Judge of Election authority to announce the time and place at which candidates will need to furnish proof of said qualifications. (*Id.* at 94). With the authority of Article VI, Vigil provided Trujillo three hours to retrieve proper documentation to show proof of residency. When Vigil disqualified Trujillo ten minutes into the three hours he had allotted Trujillo to retrieve proper

documentation, Vigil did not apply the residency requirement uniformly, but rather unfairly and unreasonably.

Accordingly, the Court finds that Defendant unfairly administered the residency requirement.  Thus, consistent with its Prior Order, the Court holds that the 2015 election is void due to the literacy requirement, [1] and further holds that the 2015 election is void due to the residency requirement.

**B.     Defendant's Motion to Amend the Judgment**

In its Motion, Defendant requests that the Court amend its Judgment to "reflect [that] the residency/lawfully employable requirement [was] reasonable and uniformly imposed. . . ." (Def.'s MTAJ 4:2–4, ECF No. 58).[2]  Pursuant to the Court's clarification above, and after reviewing Defendant's Motion, the Court denies Defendant's Motion to Alter or Amend Judgment.

## IV.     <u>CONCLUSION</u>

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Reconsideration, (ECF No. 59), is **GRANTED** as to the residency requirement and **DENIED** as to the literacy requirement.

**IT IS FURTHER ORDERED** that the Court **GRANTS** summary judgment for Plaintiff as to the residency requirement.

**IT IS FURTHER ORDERED** that Defendant's April 18, 2015 election for the office of vice president remains void and that a new election be conducted for the office of vice president under Plaintiff's supervision.

///

///

---

[1] Although Plaintiff argues that the Court should hold that the literacy requirement be waived due to its unconstitutionality, the Court stands by its Prior Order and **DENIES** this request.

[2] In the alternative, Defendant requests that the Court stay the enforcement of the judgment until April 2018. (*Id.* at 8:3–4).  However, because the April 2018 elections have passed, Defendant's Motion in the Alternative is **DENIED** as moot.

Case 2:15-cv-01279-GMN-CWH   Document 89   Filed 09/24/18   Page 10 of 10

**IT IS FURTHER ORDERED** that Defendant's Motion to Alter or Amend Judgment or Alternatively to Stay Enforcement of Judgment, (ECF No. 58), is **DENIED**.

**DATED** this __24__ day of September, 2018.

_____

Gloria M. Navarro, Chief Judge
United States District Court

**NOT FOR PUBLICATION**

# FILED

UNITED STATES COURT OF APPEALS

MAY 18 2020

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| EUGENE SCALIA, Secretary of Labor, United States Department of Labor,* | No. 18-17229 |
| Plaintiff-Appellee, | D.C. No. 2:15-cv-01979-GMN-CWH |
| v. | |
| LABORERS INTERNATIONAL UNION OF NORTH AMERICA LOCAL 872, | MEMORANDUM** |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Nevada
Gloria M. Navarro, District Judge, Presiding

Argued and Submitted May 6, 2020
Portland, Oregon

Before: WATFORD and HURWITZ, Circuit Judges, and PREGERSON,*** District Judge.

Officials of Laborers International Union of North America Local 872

---

\* Eugene Scalia is the current Secretary of Labor and was automatically substituted as a party. Fed. R. App. P. 43(c)(2).

\*\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\*\* The Honorable Dean D. Pregerson, United States District Judge for the Central District of California, sitting by designation.

disqualified Martin Trujillo as a candidate for the Local vice-presidency in 2015, finding that he failed to establish English literacy and lawful permanent residency at the nomination meeting. The Secretary of Labor challenged Trujillo's disqualification under Title IV of the Labor-Management Reporting and Disclosure Act ("LMRDA"), which requires that a "reasonable opportunity shall be given for the nomination of candidates and every member in good standing shall be eligible to be a candidate and to hold office (subject to . . . reasonable qualifications uniformly imposed)." 29 U.S.C. § 481(e). Under the LMRDA, even facially reasonable qualifications "may not be proper if they are applied in an unreasonable manner." 29 C.F.R. § 452.53; *see Reich v. Local 89, Laborers' Int'l Union of N. Am.*, 36 F.3d 1470, 1477, 1478 (9th Cir. 1994).

The district court granted summary judgment to the Secretary, declared the 2015 vice-presidential election void, and ordered the Secretary to supervise a new election. *See* 29 U.S.C. § 482(c). We have jurisdiction over Local 872's appeal under 28 U.S.C. § 1291 and affirm.

1. The district court correctly held that Local 872 unreasonably applied its residency requirement. Although the election notice required candidates to bring one of several specific forms of documentation of legal residency to the nomination meeting, Trujillo brought only his driver's license, which was not on the list of

acceptable documents.[1]  The election judges initially accepted the driver's license as proof of residency, but then instructed Trujillo, who indicated that he had two acceptable forms of documentation at home, to leave the meeting and return with them by the end of the day.  Ten minutes after Trujillo left, however, the election judges disqualified him, although election ballots were not scheduled to be mailed for another month, guaranteeing reelection of the now-unopposed incumbent.

Trujillo was presumptively eligible for office, *see* 29 U.S.C. § 481(e), and  "in the light of all the circumstances," *Chao v. Bremerton Metal Trades Council*, 294 F.3d 1114, 1121-22 (9th Cir. 2002) (quoting *Local 3489, United Steelworkers of Am. v. Usery*, 429 U.S. 305, 313 (1977)), Local 872 acted unreasonably in summarily disqualifying him for lack of documentation that he was given permission to retrieve. *See Reich v. Dist. Lodge 720, Int'l Ass'n of Machinists & Aerospace Workers*, 11 F.3d 1496, 1498 (9th Cir. 1993) ("The purpose of Title IV is to insure free and democratic  union  elections  and  offset  some  of  the  inherent  advantages  that

---

[1]     We reject the Secretary's contention that requiring candidates to present proof of residency at the nomination meeting conflicts with the union constitution.  *See Busch v. Givens*, 627 F.2d 978, 981 (9th Cir. 1980) ("Absent bad faith or other compelling circumstance, a union's interpretation of its constitution, as well as its interpretation of its own rules and procedures, should prevail over a court's notion as to how the union should conduct its affairs.").

incumbents enjoy over rank and file members.").[2]

2. Local 872 also unreasonably applied the literacy requirement. Trujillo was deemed illiterate based entirely on an election judge's assessment that his reading of passages from the union constitution was not "smooth" and "continuous," and that Trujillo seemed to have difficulty, paused, and mispronounced "some words." Under the LMRDA, a union must establish "specific standards of eligibility by which any member can determine in advance whether or not he is qualified to be a candidate." 29 C.F.R. § 452.53. The ad hoc determination that a candidate's reading of the union constitution does not pass muster fails to meet that standard.[3]

3. Upon finding a LMRDA violation that "may have affected the outcome of an election," the district court must declare the election void and "direct the conduct of a new election under supervision of the Secretary." 29 U.S.C. § 482(c). Local 872 asks us to direct the Secretary to supervise the next regularly scheduled election in 2021, rather than an interim election. Although the LMRDA

[2] On appeal, the Secretary does not dispute the general validity of a residency or literacy requirement, contending only that Local 872's requirements were unreasonably applied to Trujillo.

[3] The Secretary need not establish Trujillo's literacy to show that the requirement was unreasonably applied. The LMRDA was not "designed merely to protect the right of a union member to run for a particular office in a particular election," but rather to protect the "vital public interest in assuring free and democratic union elections that transcends the narrower interest of the complaining union member." *Wirtz v. Local 153, Glass Bottle Blowers Ass'n*, 389 U.S. 463, 475 (1968).

4

contemplates a prompt election, *see* 29 U.S.C. § 482(d), Local 872's next regularly scheduled election is less than a year away and Trujillo is no longer a member of the Local. Local 872 argues that it would be inequitable to require a costly interim election for one office now because the Secretary declined to supervise the intervening 2018 election and the current vice-president's term is nearly finished.

Although Local 872's arguments have some force, we decline to issue a prescriptive order to the Secretary about scheduling the supervised election. The district court simply ordered that "a new election be conducted for the office of vice president under [the Secretary's] supervision," without specifying a particular date. The LMRDA does not prohibit the Secretary from agreeing to supervise Local 872's next regularly scheduled election. *See* 29 U.S.C. § 482(b), (c). We therefore affirm the orders of the district court. If the parties are unable to arrive at a mutually agreeable time for the Secretary to supervise a vice-presidential election, they are free to return to the district court to resolve that dispute in the first instance.[4]

**AFFIRMED.**[5]

---

[4] At oral argument, counsel for the Secretary indicated that the Department's "general position" is to coordinate with unions in scheduling supervised elections, and that, in light of the ongoing global pandemic, the Secretary was open to coordinating with Local 872 to schedule the supervised vice-presidential election.

[5] Local 872's motion for judicial notice, **Dkt. 18,** is denied.

# EXHIBIT B

Stipulation of Settlement (ECF No. 82)

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

EUGENE SCALIA, Secretary of Labor,
United States Department of Labor,

                    Plaintiff,

      v.

LOCAL 872, LABORERS INTERNATIONAL
UNION OF NORTH AMERICA,

                 Defendant.

Case No. 2:15-cv-01979-GMN-CWH

**STIPULATION OF SETTLEMENT**

Eugene Scalia, Secretary of Labor (Secretary), and Defendant, Local 872, Laborers

International Union of North America (Local 872), by and through their undersigned

counsel, hereby stipulate and agree to settlement of this dispute as follows, and

respectfully request that the court so order.

<u>RECITALS</u>

1. Plaintiff U.S. Secretary of Labor brought this action under Title IV of the Labor-

   Management Reporting and Disclosure Act of 1959, 29 U.S.C. §§ 481-483

   (LMRDA), for a judgment declaring that the election of union officers completed

   on April 18, 2015 and conducted by Defendant Local 872, Laborers International

   Union of North America (Local 872) for the office of Vice President, is void, and

   directing Defendant to conduct a new election for that office under Plaintiff's

   supervision, and for other appropriate relief.

2. In his complaint the Secretary contended Local 872 violated Section 401(e) of the

LMRDA, 29 U.S.C. § 481(e), by disqualifying a member in good standing when Defendant applied two candidacy qualifications in an unreasonable manner:

    a.  Literacy requirement: Defendant applied a literacy test that contained no objective criteria to determine whether a nominee was literate and singled out only one nominee to be tested.

    b.  Residency requirement: Defendant provided a nominee time to retrieve from home his proof of residency but retracted that permission shortly thereafter.

3.   On August 25, 2017, the U. S. District Court for the District of Nevada issued a decision finding that Defendant violated Section 401(e) by its unreasonable application of the literacy requirement and ordering a supervised remedial election for the position of Vice President. *Acosta v. Local 872, Laborers Int'l Union of N. Am.,* 2017 WL 3709055 (D. Nev. Aug. 25, 2017). The Court did not invalidate a literacy requirement.

4.  On September 24, 2018, the U. S. District Court for the District of Nevada issued a decision finding that Defendant further violated Section 401(e) by its unreasonable application of the residency requirement and again ordering a supervised remedial election for the position of Vice President. *Acosta v. Local 872, Laborers Int'l Union of N. Am.,* 2018 WL 4600285 (D. Nev. Sept. 24, 2018). The Court did not invalidate a residency requirement.

5.  On November 19, 2018, Defendant filed a Notice of Appeal in the U. S. Court of Appeals for the Ninth Circuit.

6.  On May 18, 2020, the U. S. Court of Appeals for the Ninth Circuit affirmed the

lower court's decisions finding violations on the literacy and residency issues and ordered a new election under the Secretary's supervision for the office of vice president, to be conducted either immediately or at Defendant's 2021 triennial election. *Scalia v. Laborers Int'l Union of N. Am. Local 872*, 2020 WL 2520079 (9th Cir. May 18, 2020).

### TERMS AND CONDITIONS

7. Plaintiff and Defendant (the Parties), in settlement of this action, hereby stipulate and agree that Local 872 will conduct, under the supervision of the Secretary, its next regularly scheduled election of officers, to be completed no later than June 30, 2021. The Secretary will supervise the election of all "officers" as defined by the LMRDA. Defendant will install the newly elected officers pursuant to the LIUNA Constitution and the Local 872 Bylaws no later than July 15, 2021.

8. The supervised election shall be conducted in accordance with Title IV of the LMRDA (29 U.S.C. 481, *et seq.*) and, insofar as lawful and practicable, in accordance with Defendant's International Constitution and its Bylaws.

9. All questions as to the interpretation or application of Title IV of the LMRDA, and Defendant's International Constitution and bylaws relating to the supervised election are to be determined by the Secretary's designated Election Supervisor, Office of Labor Management Standards (OLMS), whose decision shall be final

10. By this agreement, Local 872 agrees to the following procedures for conducting the supervised election:

a. Regarding the types of proof acceptable to meet the residency requirement in Article V, Section 2 of the International Constitution, a member shall present any ONE of the following: (i.) Birth certificate from any U.S. state or territory; (ii.) U.S. Passport; (iii.) Alien Registration Receipt Card ("Green Card"); (iv.) Certificate of Naturalization; (v.) "Real ID" (a driver's license or identification card) issued by any federal or state authority; or, (vi.) any other valid proof of eligibility deemed acceptable by the Secretary.

b. Under Article V, Section 3 of the LIUNA Uniform Local Union Constitution, a member will be deemed literate if he or she has the ability to comprehend and complete the candidate questionnaire (Questionnaire) without assistance. The Questionnaire to be used in the supervised election is attached to this Stipulation as Attachment 1. In determining whether a member is able to "comprehend and complete" the Questionnaire and is therefore literate pursuant to Article V, Section 3 of the LIUNA Uniform Local Union Constitution, the following criteria apply:

   i. A reasonable person would understand the meaning of any answer provided in the Questionnaire;

   ii. Answers in the Questionnaire need not be grammatically or syntactically correct, and one-word responses can suffice; and

   iii. Other standards deemed appropriate by the Election Supervisor uniformly applied and announced before the nomination meeting.

c. The determination of the Secretary as to whether the member has qualified

under Article V, Sections 2 and 3 of the International Constitution shall be final and binding.

d. All relevant information regarding qualifications for office, including the URL address for the LIUNA Local Union Officer Elections – A Guide for Local Union Election Judges, Officers and Members and the Questionnaire ("LIUNA Election Guide"), shall be included on the Notice of Nominations which is mailed to all members of Local 872. The Notice of Nominations will provide the Election Supervisor's contact information so that members with any questions, including about candidate qualification, can contact OLMS.

e. The Notice of Nominations shall state that nominees may be excused from attending the nominations meeting according to Section 3.4.2 of the LIUNA Election Guide. The Notice shall state that the Election Supervisor will determine the qualification of all immediately upon conclusion of the meeting. The Election Supervisor will determine the qualifications of any nominee excused from attending the nominations meeting within 24 hours.

f. The Notice of Nominations will also be posted in a prominent place at Local 872's hall and on Local 872's website homepage. The Notice of Nominations posted on the website shall contain a live link to the Questionnaire.

g. Local 872 agrees that OLMS' Election Supervisor has authority to supervise all phases of the nomination and election process and that all functions carried out by the election committee members, judges, and/or tellers must be conducted under the supervision of OLMS' Election Supervisor. Before

February 1, 2021, Local 872 shall appoint one local officer, employee, or
election judge who will be responsible for fulfilling requests by the Election
Supervisor for any union documents, data, or other information and assisting
the Election Supervisor when so requested to ensure that election activities
are properly conducted within established timelines. The Secretary will
designate the Election Supervisor before February 1, 2021

11. Any protests concerning any aspect of the supervised election must be filed in
writing directly with the Election Supervisor no later than 10 days after the
completion of the ballot tally.

12. COVID-19: Both parties agree to cooperate to ensure the health and safety of
everyone involved with the Supervised Election and to comply with applicable
local, state, and federal requirements.

13. By this agreement, Defendant acknowledges that the Secretary will not certify
the election to the Court until the newly elected officers are installed in office
pursuant to the Constitution of the LIUNA and the Bylaws of Local 872.

13. The U.S. District Court for the District of Nevada shall retain jurisdiction of this
action and, after completion of the supervised election, Plaintiff shall certify to
the Court the name of the persons so elected and that such election was
conducted in accordance with Title IV of the LMRDA and, insofar as lawful and
practicable, in accordance with the provisions of Defendant's Constitution and
Bylaws.  Upon approval of such certification, the District Court shall enter a
Judgment declaring that such persons have been elected as shown by such

certification to serve a three-year term, and further providing that each party

shall bear its own costs, including attorney's fees, and other expenses incurred by

the party in connection with any stage of this proceeding.

14. This Stipulation of Settlement constitutes the complete agreement between the

Parties and is not subject to amendment except by written consent of the Parties.

Respectfully submitted,

/s/ Troy K. Flake
TROY K. FLAKE
Assistant United States Attorney
Attorney for Plaintiff

KRISTINA L. HILLMAN, Bar No. 7752
LAW OFFICES OF KRISTINA L. HILLMAN
ATTORNEYS FOR DEFENDANT

Brian A. Pifer
Director, Office of Field Operations
Office of Labor-Management Standards

# EXHIBIT C

Certification of Election (ECF No. 85)

1 CHRISTOPHER CHIOU
  Acting United States Attorney
2 District of Nevada
  Nevada Bar No. 14853
3 TROY K. FLAKE
  Assistant United States Attorney
4 501 Las Vegas Boulevard, South, Suite 1100
  Las Vegas, Nevada 89101
5 702-388-6336
  Troy.Flake@usdoj.gov
6
  *Attorneys for the United States*
7

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| MARTIN J. WALSH,<br>Secretary of Labor,<br>United States Department of Labor,<br><br>              Plaintiff,<br><br>     v.<br><br>LOCAL 872, LABORERS<br>INTERNATIONAL UNION OF NORTH<br>AMERICA,<br><br>              Defendant. | Case No. 2:15-cv-01979-GMN-CWH<br><br>**United States' Notice of Certification<br>of Election** |

The United States submits Notice of Certification of Election. The following

Certification of Election and the Declaration of Tracy L. Shanker, along with

accompanying exhibits, support Plaintiff's certification at set forth therein.

        Dated this 26th day of July 2021

                         Respectfully submitted,

                         CHRISTOPHER CHIOU
                         Acting United States Attorney


                          */s/ Troy K. Flake*
                         TROY K. FLAKE
                         Assistant United States Attorney

1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| **MARTIN J. WALSH,**[1] | ) |
| **Secretary of Labor,** | ) |
| **United States Department of Labor,** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| **v.** | )    **Civil No. 2:15-cv-01979-GMN-CWH** |
| | ) |
| **LOCAL 872, LABORERS** | ) |
| **INTERNATIONAL UNION OF** | ) |
| **NORTH AMERICA,** | ) |
| | ) |
|     **Defendant.** | ) |

## <u>CERTIFICATION OF ELECTION</u>

The election having been conducted in the above matter under the supervision of the Secretary of Labor, United States Department of Labor, pursuant to the Court's Summary Judgment Orders entered August 24, 2017, and September 24, 2018, in the United States District Court for the District of Nevada, affirmed by the United States Court of Appeals for the Ninth Circuit on May 18, 2020, in accordance with the provisions of Title IV of the Labor-Management Reporting and Disclosure Act of 1959 (29 U.S.C. §§ 481-483), and in conformity with the constitution and bylaws of the defendant labor organization, insofar as lawful and practicable, and no post-election complaints having been received concerning the conduct thereof, therefore:

---

[1] Because the Secretary of Labor has changed since this case first began, the caption reflects the current Secretary of Labor.  *See* Fed. R. Civ. P. 25(d).

Pursuant to Section 402(c) of the Labor-Management Reporting and Disclosure Act of 1959 (29 U.S.C. § 482(c)), and the authority delegated to me,

IT IS HEREBY CERTIFIED that the following named candidates have been duly elected to the offices designated:

| | |
|---|---|
| Louis De Salvio | President |
| Marco Hernandez | Vice President |
| Chelsy Torres | Recording Secretary |
| Thomas White | Business Manager/Secretary-Treasurer Delegate |
| Henry Baker | Sergeant-at-Arms |
| Dennis Cronin | Auditor |
| Eddie Ramirez | Auditor |
| David Pruitt | Auditor |
| Rogelio Gonzalez | Executive Board Member |
| Archie Walden | Executive Board Member |
| Mike DaSilva | Executive Board Member |
| Louis De Salvio | District Council Delegate |
| Dennis Cronin | District Council Delegate |
| Rogelio Gonzalez | District Council Delegate |
| Marco Hernandez | District Council Delegate |

Signed this 1st day of July, 2021.

_____
Tracy L. Shanker, Chief
Division of Enforcement
Office of Labor-Management Standards
United States Department of Labor

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA

_____

MARTIN J. WALSH,[1]                          )
Secretary of Labor,                          )
United States Department of Labor,           )
                                             )
      Plaintiff,                       )
                                             )  Case No.:
      v.                               )  2:15-cv-01979 GMN-CWH
                                             )
LOCAL 872, LABORERS INTERNATIONAL UNION      )
    OF NORTH AMERICA                    )
                                             )
      Defendant.                       )
_____          )

DECLARATION OF
TRACY L. SHANKER

      I, Tracy L. Shanker, am the Chief, Division of Enforcement, Office of Labor-Management Standards (OLMS), United States Department of Labor (Department).  The Department supervised an election of officers of Defendant Local 872 (local or Local 872), Laborers International Union of North America, (International or LIUNA), which was held on April 17, 2021, pursuant to this Court's Orders dated August 25, 2017, and September 24, 2018, and the decision of the Ninth Circuit, dated May 18, 2020.[2]  Exh. 1. On July 24, 2020, the parties executed a Stipulation of Settlement (settlement agreement) whereby the Department would supervise Local 872's May 2021 triennial election.  Exh. 2, Stipulation of Settlement.  Pursuant to that settlement agreement, the supervised election included new elections for the offices of President/Convention Delegate, Vice President, Recording Secretary, Business Manager-District Council Delegate-Convention Delegate-Secretary Treasurer, Sergeant-at-Arms, three Auditors, four District Council Delegates, and three Executive Board Members.  The newly elected officers were installed on May 3, 2021.

---

[1] Because the Secretary of Labor has changed since this case first began, the caption reflects the current Secretary of Labor. *See* Fed. R. Civ. P. 25(d).

[2] Acosta v. Loc. 872, Laborers Int'l Union of N. Am., 2017 WL 3709055 (D. Nev. Aug. 25, 2017), *on reconsideration in part*, 2018 WL 4600285 (D. Nev. Sept. 24, 2018), *aff'd sub nom*. Scalia v. Laborers Int'l Union of N. Am. Loc. 872, 811 F. App'x 1019 (9th Cir. 2020).

After receiving one pre-election complaint, OLMS investigated and resolved the complaint prior to OLMS' certification of the supervised election.

A. **Election Process**

*Pre-election Conference*

OLMS held a pre-election conference at Local 872's union hall on February 25, 2021, at 12:30 p.m.  Exh. 3, Pre-Election Conference Agenda.  Invited to that pre-election conference were 21 "interested parties."[3] The purpose of the pre-election conference was to promulgate the rules, regulations, procedures, and timeframe for conducting the supervised election. Exh. 4, General Election Rules For Electing Officers (General Rules).  Attendees received a copy of the agenda and proposed election timeline.  Exh. 5, Election Timeline.  OLMS made available to the attendees, upon request, the Court Order, the settlement agreement, the Federal Regulations, LIUNA International Constitution (International Constitution), and LIUNA Uniform Local Union Constitution (Local Constitution).

Three OLMS representatives were present at the pre-election conference: Election Supervisor Phoenix Beausoleil, who conducted the pre-election conference and was responsible for the supervised election, District Director Ed Oquendo, and Senior Investigator Troy Krouse.  On March 16, 2021, the General Rules were finalized and mailed to those who attended the pre-election conference and those who were invited but did not attend.   Exh. 6.

Although the names of Richard Vela and Parnell Colvin were included on the list of "interested parties," Local 872's attorney objected to their attendance on the basis that

---

[3] OLMS considers former and probable officers/candidates/complainants to be interested parties, as well as a local's attorney.

they were no longer members of the local and, as such, should not be permitted to participate in the internal affairs of the union. OLMS concurred, permitting only members of Local 872 and its attorney to attend the conference.

*Election Committee*

There were three Judges of Election, all of whom were members of Local 872: Tom Morley (*election chair*), Andy Donahue, and Anthony Valdez. Member Leon Harris served as an alternate. Election Supervisor Beausoleil directly supervised all activities performed by the Judges of Election in relation to the supervised election.

*Notice of Nominations and Election*

The Election Supervisor drafted a comprehensive combined nominations and election notice, with which Local 872 concurred. Exh. 6, Combined Nominations and Election Notice. The notice, in English and in Spanish, referred to this Court's 2018 Order and the Stipulation of Settlement and listed the offices subject to the supervised election, specifying that the terms of office would be 3 years. Members were notified that the supervised election would be held on May 27, 2021.[4]

Regarding nominations, the notice announced all pertinent nominations information including the nominations meeting date (April 17, 2021), time (7 a.m.), place (union hall with its address), form of nominations (from the floor at the nominations meeting or in writing in advance of the meeting), and that self-nominations were not allowed. The notice provided the details about the required contents of written nominations, how to submit them by mail, email, or fax to the Election Supervisor, and

---

[4] The notice informed members that the supervised election was being held in conjunction with the local's regularly scheduled election of its eleven delegates to the International Convention. The notice made clear that candidates elected as Local 872 President and Business Manager would automatically serve as International Convention delegates, filling two of the local's eleven International Convention delegate positions.

the deadline for those submissions.  The notice also provided that written nominations would be read at the nominations meeting before oral nominations were taken and that all nominations needed to be seconded.  The notice stated that it was necessary to be a member in good standing as of April 17, 2021, in order to nominate a candidate, explained what constitutes good standing, and provided the telephone number members could use to check their status.  The notice made clear the method of accepting nominations (in person or in writing with approved, excused absence), among other information.  The notice made clear that nominees must be present at the nominations meeting, unless their absence was excused, and that nominations must be accepted in writing to the Election Supervisor either prior to or at the nominations meeting.

Regarding eligibility to run for office, the notice stated that the candidate qualifications are outlined in Article V (Qualifications for Office) of the Local Constitution and quoted several of the provisions with specific citations, including continuous good standing, residency, literacy and working at the calling.  The notice emphasized that all nominees would be required to meet with the Election Supervisor and Election Judges immediately after the close of nominations to provide proof of residency and to complete the Questionnaire.  The notice provided the website address to the Local Union Officers Elections - *A Guide for Local Union Judges of Election, Officers and Members* (Election Guide) and to the local's website where the Questionnaire was available.

The election portion of the combined notice stated that the election would be conducted by secret mail ballot on May 27, 2021, reiterated the offices to be elected, and detailed the voter eligibility criteria and the procedure to restore good standing status in

time to vote.  The notice explained the balloting procedures, including how to obtain

replacement ballot, if necessary.  The notice set forth the time and place for the collection

and tally of the ballots and indicated that the results would be announced immediately

following tally.  Further, the notice provided information for submitting election protests

to the Election Supervisor, including applicable timeframe.

*Mailing of Combined Nominations/Elections Notice*

On March 24, 2021, the Election Supervisor oversaw the mailing of 3,768

combined nominations and election notice packages to the last known home address of

each member. A total of 2,803 packages were mailed to members in good standing, 465

packages were mailed to retired members, and 500 packages were mailed to suspended

members.

On the same day, the combined notice along with a copy of the candidate

questionnaire were posted electronically on the Local 872 website page and in hard copy

on the office bulletin board at Local 872's union hall. OLMS received no reports of any

issues involving the combined nominations and election notice.

*Nominations and Candidate Eligibility*

The nominations meeting was held on April 17, 2021, at Local 872's union hall.

Only members in good standing at the time of nominations were eligible to nominate

candidates. Oral nominations were made from the floor.  No written nominations were

submitted. Candidates were permitted to accept nominations in writing either in person at

the time made or, if absent, submitted by mail, email, or fax prior to the nominations

meeting, to the Election Supervisor.  Candidates were restricted to accepting nomination

for one office only, with the exception of combined offices set forth in the constitution.

Immediately after the close of nominations, all nominees were required to meet with Election Supervisor Beausoleil, OLMS Senior Investigator Krouse, and the Judges of Election to provide proof of residency and complete the candidate questionnaire. Election Supervisor Beausoleil determined each nominee's qualification under Article V of the LIUNA Uniform Local Union Constitution.

One nominee for an Executive Board Member position was disqualified after failing to disclose criminal convictions in response to Question 12 on the candidate questionnaire; the Election Supervisor conducted a criminal background check and confirmed that the nominee had criminal convictions that he failed to disclose. The remaining 15 candidates received eligibility letters and accepted their nominations. OLMS encountered no issues during the nominations process.

*Election by Acclamation*

The following offices were up for election: President/Convention Delegate, Vice President, Recording Secretary, Business Manager-District Council Delegate-Convention Delegate-Secretary Treasurer, Sergeant-at-Arms, three Auditors, three Executive Board Members, and four District Council Delegates. After the disqualification of a nominee for Executive Board Member, no offices were contested and the sole candidate for each office won by acclamation. Consequently, no ballots were cast in May 2021.

| OFFICE | CANDIDATE |
|---|---|
| President/Convention Delegate | Louis De Salvio |
| Vice President | Marco Hernandez |
| Recording Secretary | Chelsey Torres |
| Business Manager-Delegate/Convention Delegate-Secretary Treasurer | Thomas White |

6

| | |
|---|---|
| Sergeant-at-Arms | Henry Baker |
| Auditor (3) | Dennis Cronin |
| | Eddie Ramirez |
| | David Pruitt |
| Executive Board Member (3) | Rogelio Gonzalez |
| | Archie Walden |
| | Mike DeSilva |
| District Council Delegate (4) | Louis De Salvio |
| | Dennis Cronin |
| | Rogelio Gonzalez |
| | Marco Hernandez |

1

### B. Pre-election Protest

In his April 13, 2021 email to Election Supervisor Beausoleil, Complainant McDonald made three allegations, recited and addressed below.

*Allegation 1. Election officials failed to provide proper notice of nominations and election to all members when they did not announce those events at the first three membership meetings this year, namely on Feb. 1, March 1, and April 5, 2021.*

*OLMS Response:* Section 401(e) of the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA), provides, in relevant part, that "[n]ot less than fifteen days prior to the election notice thereof shall be mailed to each member at his last known home address." The election notice must specify the date, time, place of election, offices to be filled, and it must be in such a form as to be reasonably calculated to inform members of the impending election. 29 C.F.R. § 452.99. Further, a notice of election must be sent to all members, not just those in good standing. *Id.*

A nominations notice is less formal than an election notice; unions are not required to provide either a mailed notice or 15-days' advance notice of nominations. 29

C.F.R. § 452.56.  Rather, to meet the nominations notice requirement, a union must give timely notice in a manner reasonably calculated to inform all members of the offices to be filled in the election, as well as the time, place, and form for submitting nominations. *Id.*  A single notice for both nominations and election may be used if it meets the requirements of both such notices.  29 C.F.R. § 452.99.

Contrary to the complainant's assertion, the local was not required to provide notice of the nominations and election at any of its three membership meetings held in February, March, or April 2021.  Rather, the local was required to abide by the statutory mandate of section 401(e) regarding notice of nominations and election.  The combined notice announced the date, time, place of the nominations meeting and the election.  The combined notice specified the offices to be filled, candidacy qualifications, criteria for voter eligibility, balloting procedures, and information regarding the submission of election protests and applicable timeframes.  This information was provided in both English and Spanish.  Moreover, this combined notice was mailed to every member, regardless of their good standing status.  Further, the combined notice was sent to members' last known home addresses well in advance of the 15-day requirement imposed by Section 401(e).  29 U.S.C. § 481(e); 29 C.F.R. § 452.99.  That combined notice was also posted on the local's bulletin board and on its webpage.  OLMS determined that the combined nominations and election notice not only met the statutory requirement of Section 401(e) of the LMRDA but in fact exceeded it.  There was no violation.

> ***Allegation 2.***  *The Department of Labor failed to notify the entire membership about the pre-election conference. Some of the interested parties who were invited to attend the conference were instructed not to attend so that no problem would arise.*

*OLMS Response*: OLMS' pre-election conference is not mandated by the LMRDA. Even though OLMS is not required to hold pre-election conferences at all, it has developed this now routine practice as part of conducting supervised elections, allowing the union to have a measure of input into the government-supervised election.

In the instant case, Local 872's attorney objected to the inclusion of Richard Vela and Parnell Colvin among the names listed as "interested parties" invited to attend the pre-election conference. The attorney objected because both were no longer members of Local 872 and consequently should not be permitted to participate in the union's internal affairs. OLMS found the objection reasonable and did not invite those former members to the pre-election conference. There was no violation.

*Allegation 3*. *Election officials misinterpreted the candidate qualification pertaining to retirees, ignoring the exception to the rule, thereby denying retirees the right to run for office.*

*OLMS Response:* Section 401(e) of the LMRDA provides in relevant part that "every member in good standing shall be eligible to be a candidate and to hold office (subject to . . . reasonable qualifications uniformly imposed) . . . ." Section 4.3.4.6 of the Election Guide regarding retirees provides:

> Any person who receives a pension from a pension or retirement fund related to the International Union or any affiliate thereof is presumed to be a retiree and, therefore, not to be working at the calling of the International Union and not to be qualified as a candidate for office. ULUC, Art. V, § 11; see also ULUC, Art. VII, § 6. This presumption of ineligibility can be overcome by, for example, evidence of work performed under covered agreement or one of the other qualifying circumstances set forth in ULUC, Art. V, § 4. Bottom line, the fact that a nominee is receiving a pension from a LIUNA entity does not necessarily mean a person is retired but it is strong evidence of that status.

OLMS attempted to contact complainant McDonald numerous times to discuss in detail each of his three allegations, including this one. McDonald did not respond to any

of OLMS' attempts to reach him.  Even without further information from McDonald, it can be said with confidence that no nominee was disqualified based on retirement status. Indeed, the retirement status of any nominee was simply never raised at any time during the nominations meeting or during the meetings that occurred immediately thereafter between each nominee and the Election Supervisor, Senior Investigator, and Judges of Election.  Consequently, there was no occasion to interpret this retiree provision.

Moreover, the Election Supervisor mailed all members, including complainant McDonald and all retiree members, a copy of the combined nominations and election notice.  That notice provided the webpage address for the Election Guide which specified that evidence of a retiree working for a covered employer would overcome the presumption that retirees are ineligible to run for office.  There was no violation.

### C.  Conclusion

The Department has concluded from its investigation that Laborers Local 872's election, concluded on April 17, 2021, conducted under the Department's supervision, complied with Title IV of the LMRDA and was conducted, insofar as lawful and practicable, in accordance with the Defendants constitution and bylaws.  Therefore, no reason exists to overturn the results of this supervised election.

I declare under penalty of perjury that the foregoing is true and correct. Executed on the 1st of July 2021, in Rockville, Maryland.

_____
Tracy L. Shanker, Chief
Division of Enforcement
Office of Labor-Management Standards
United States Department of Labor